OPINION.
Defendant-appellant April Parson was indicted on one count of involuntary manslaughter, under R.C. 2903.11, one count of child endangering, under R.C. 2919.22(A), and a second count of child endangering, under R.C. 2919.22(B)(3). Parson filed a motion to dismiss the count of child endangering under R.C. 2919.22(B)(3) because it lacked the element of recklessness. The trial court denied the motion to dismiss, and a jury was impaneled. Subsequently, the count of child endangering under R.C. 2929.19(A) was dismissed, and the count of child endangering under R.C. 2929.19(B)(3) was amended to include the element of recklessness. Following a jury trial, Parson was found guilty of involuntary manslaughter, a first-degree felony, and child endangering involving serious physical harm to a child, a second-degree felony. She received maximum consecutive sentences. In this appeal, she presents four assignments of error, none of which is well taken.
On October 4, 1998, Parson discovered that one of her two-month-old twins was not breathing in bed. According to a copy of a police interview with Parson, she had been home alone with her two-year-old son and the twin boys. She stated that one of the twins had been crying incessantly, and that, after feeding him, holding him, and comforting him, she had placed him on his mattress with his face down on a pillow. Parson stated that she then put another pillow and a "balled up sheet" on top of the boy's head because the crying had not stopped. Parson stated that, while her actions muffled the crying somewhat, she remained upset by the crying and went downstairs to watch television and put clothes in the washer. Parson stated that she remained downstairs for forty-five minutes to one hour, even though she knew that her child might be suffocating. When Parson went back upstairs to check on the boy, he was not breathing. Parson called 911 for assistance. With the help of a 911 operator, Parson administered first aid to the boy, but she was unable to revive him.
Officer Kelli Finn responded to the 911 call. While the boy was transported to the hospital in an ambulance, Finn took Parson to the hospital in a police cruiser. Finn testified that, on the way to the hospital, Parson had made inappropriate "small talk," and that Parson had repeatedly indicated to her that infants commonly died of sudden infant death syndrome (SIDS). According to Finn, Parson's general demeanor in front of her was calm, unemotional, and "flat," but when a family member or friend would arrive, Parson's "demeanor would become theatrical," and she would "play a role of a distraught, concerned parent."
The boy was pronounced dead at the hospital, and an autopsy was performed. The cause of death was determined to be "asphyxiation by smothering." Parson was thereafter placed under arrest.
In the first assignment of error, Parson maintains that the trial court erred in overruling her motion to dismiss the indictment. It is undisputed that recklessness is the culpable mental state for child endangering,[1] and that it must be included in the indictment.[2]
An indictment, however, may be amended before, during, or after a trial pursuant to Crim.R. 7(D), as long as the amendment makes no change in the name or identity of the crime charged, and the accused has not been misled or prejudiced by the omission of an element from the indictment.[3]
By amending the indictment here, the state did not change the name or identity of the charged offense; rather, the amendment merely inserted the word "recklessly." Moreover, we are unconvinced that Parson was misled or prejudiced by the omission, because she brought the error to the court's attention, and because the jury was properly instructed to determine whether Parson had acted recklessly. Under these circumstances, we hold that the trial court did not err in denying the motion to dismiss, and we overrule the first assignment of error.
In the second assignment of error, Parson alleges that the trial court improperly struck portions of Dr. Emmett Cooper's testimony. Cooper is a psychiatrist who had examined Parson and testified that, although Parson was sane at the time of the offenses, she suffered from "bipolar disorder, major depression, and an adjustment disorder." During his testimony, Cooper rendered an opinion as to whether Cooper's mental state approximated the legal definition of recklessness, but that opinion was excluded.
Evid.R. 704 provides that testimony is not objectionable "solely because it embraces an ultimate issue to be decided by the trier of fact." Though the rule permits testimony on an ultimate issue, admission is not automatic; the testimony must still be reliable and aid the trier of fact, and the expert must be qualified to render the testimony.[4]
It is within the sound discretion of the trial court to determine the admissibility of an expert's opinion.[5]
The ultimate issue in this case was whether Parson had acted recklessly. Having reviewed the record, we cannot say that the trial court abused its discretion in determining that the resolution of this issue was within the jury's general knowledge and experience. Given that, we overrule the second assignment of error.
In the third assignment of error, Parson challenges the weight and the sufficiency of the evidence. To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all of the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[6] To reverse on the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[7]
A new trial should be granted only in exceptional cases where the evidence weighs heavily against conviction.[8]
When viewed in the light most favorable to the state, the evidence in this case was sufficient to demonstrate the elements of child endangering and involuntary manslaughter. While Parson endeavored to show that she was depressed and not acting like herself on October 4, the record demonstrates that Parson admitted to placing the boy in a bed, face down on a pillow with another pillow and a sheet placed over his head, that she left the boy for forty-five minutes, knowing that the he might be suffocating, and that death resulted from "asphyxiation by suffocation." Further, we are unconvinced that the jury improperly weighed the evidence. The weight to be given the evidence and the credibility of the witnesses were primarily for the jury,[9] and we are not persuaded that it lost its way by finding Parson guilty. Accordingly, we overrule the third assignment of error.
In the fourth assignment of error, Parson alleges that the trial court erred in imposing maximum consecutive sentences for the involuntary manslaughter and child endangering. Specifically, Parson contends that the child endangering should have been merged with the involuntary manslaughter for the purpose of sentencing. Parson also contends that the trial court did not make the requisite findings when imposing the sentences.
Two offenses are allied if their elements correspond to such a degree that the commission of one will necessarily result in the commission of the other.[10] A comparison of the elements of the offenses should be performed in the abstract, without reference to the facts of the particular case.[11] Thus, where each offense requires proof of an element that the other does not, the offenses are not allied.
Comparing the elements of Parson's offenses in the abstract, we hold that involuntary manslaughter and child endangering are not allied. The relevant section of child endangering does not include the element of death or committing a felony,[12] while the relevant section of involuntary manslaughter does not require reckless behavior that creates a substantial risk of serious physical harm to a child under the age of eighteen or to a mentally or physically handicapped child under the age of twenty-one.[13] Moreover, child endangering is just one of many felonies upon which a charge of involuntary manslaughter may be predicated. Thus, when the elements are viewed in the abstract, the offenses are not allied because the commission of one will not automatically result in the commission of the other, and the trial court did not err in failing to merge the offenses for the purpose of sentencing.
For a first- or second-degree felony, there is a presumption in favor of a prison term and a presumption that a prison term is necessary in order to comply with the purposes and principles of sentencing under R.C. 2929.11.[14] To determine the length of a prison term, the trial court must consider the seriousness and recidivism factors outlined in R.C. 2929.12, and if it imposes more than the minimum for a first-time prison term, the trial court must also determine that the minimum term would demean the seriousness of the offense and not adequately protect the public.[15] Also, if the court imposes the maximum prison term, it must make one of the four findings listed under R.C. 2929.14(C), and it must provide the reasons for imposing the maximum term.[16] To run sentences consecutively, the court must find that consecutive terms are necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offenses and to the danger the offender poses to the public.[17] Additionally, the court must find at least one of the three factors in R.C. 2929.14(E)(4)(a) through (c), and provide its reasons for imposing consecutive sentences.[18]
The record in this case demonstrates that the trial court complied with the sentencing guidelines set forth in R.C. Chapter 2929. The trial court properly considered the purposes and principles of sentencing, and the seriousness and recidivism factors, and it was entitled to find that the shortest prison term would demean the seriousness of the offenses and not adequately protect the public. Before imposing maximum sentences, the trial court found that each crime constituted "the worst form of the offense." With regard to the finding on involuntary manslaughter, the court emphasized that the infant's death was intentional and approximated the legal definition of murder. With regard to the finding on child endangering, the court observed that the infant had suffered a "horrible" death by suffocation. In ordering that the sentences run consecutively, the court found that the harm caused to the infant was great or unusual because the infant was young, innocent, and suffered greatly, and because the other children needed to be protected. In sum, we conclude that trial court made the requisite findings and provided reasons supporting those findings when it imposed maximum consecutive sentences. Accordingly, we overrule Parson's fourth assignment of error and affirm the trial court's judgment.
Hildebrandt, P.J., and Gorman, J., concur.
[1] See State v. McGee (1997), 79 Ohio St.3d 193, 680 N.E.2d 975, syllabus; State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144, paragraph one of the syllabus.
[2] See State v. O'Brien (1987), 30 Ohio St.3d 122, 124, 508 N.E.2d 144,146.
[3] See id. at paragraph two of the syllabus (construing and applying Crim.R. 7[D]).
[4] See Evid.R. 702.
[5] See State v. Williams (1983), 4 Ohio St.3d 53, 446 N.E.2d 444, syllabus.
[6] See State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[7] See State v. Thompkins, supra, at 387, 678 N.E.2d at 546-547.
[8] See id.
[9] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[10] See State v. Blakenship (1988), 38 Ohio St.3d 116, 117,526 N.E.2d 816, 817.
[11] See State v. Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, syllabus.
[12] See R.C. 2919.22(B)(3).
[13] See R.C. 2903.04(A).
[14] See R.C. 2929.13(D).
[15] See R.C. 2929.14(B).
[16] See R.C. 2929.19(B)(2)(d); State v. Edmonson (1999),86 Ohio St.3d 324, 328-329, 715 N.E.2d 131, 135.
[17] See R.C. 2929.14(E)(4).
[18] See R.C. 2929.14(E)(4); R.C. 2929.19(B)(2)(c); Accord State v.Edmonson, supra; State v. Norman (1999), 137 Ohio App.3d 184, 195-196,738 N.E.2d 403.