JOURNAL ENTRY AND OPINION
Steven House appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of four counts of felonious assault with peace officer specifications, one count of failure to comply with order or signal of police officer, and one count of driving under the influence. On appeal, House asserts eleven assignments of error, raising a plethora of evidentiary issues and challenging the imposition of consecutive sentences. After carefully reviewing the record on appeal, we affirm the judgment of conviction, vacate the sentence and remand the matter for resentencing.
The record here reveals that, on October 16, 1998, at 8:49 p.m., Cleveland Police Officers Edward Plain and Dwayne Duke observed a red 1988 Pontiac Trans Am driven by House peel out from the westbound lane of Aetna Avenue and turn left onto East 93rd Street. This car matched the radio broadcast description of a vehicle used in an earlier armed robbery in the neighboring Fifth District.
The officers therefore activated their overhead lights in pursuit of this vehicle; House did not pull over, but instead led police on a twelve-minute, eleven-mile, high-speed chase through the residential streets of Cleveland's east side. During the chase, the officers realized that the licence plate identification number on House's car did not match those of the vehicle used in the suspected robbery, but they continued the pursuit as House drove through red lights and stop signs in his attempt to flee police.
Eventually, ten police cars and a police helicopter became involved in the chase. As Officer Gerald Sowul pulled along side House in an attempted to box him in, House started to slow down in an apparent attempt to make a U-turn. Officer Sowul then executed a PIT maneuver — he tapped the left rear tire of House's vehicle — causing it to do a 180 degree turn and come to a complete stop.
Officer Sowul then immediately exited his patrol car with his weapon drawn, and ordered House to exit his vehicle. House responded by ramming the squad car occupied by Officers Plain and Duke; thereafter, Officer Plain and several other police officers then exited their police cars with their weapons drawn. The officers once again ordered House to exit his vehicle. This time, House responded by reversing his vehicle and striking Officer John Kraynik. As Officer Plain approached the vehicle, House shifted into drive and accelerated his car directly at Officer Plain, who, in fear for his life, jumped out of the way and simultaneously fired two shots at House's vehicle.
Despite having an unobstructed escape path, House then continued to drive his car at the other officers on the scene. House looked directly at Officer Terry Smith and accelerated his vehicle in Smith's direction, striking him with the vehicle. Several other officers, including Officer Donald Wellington, had to jump out of the way to avoid being run over by House's car.
According to the officers, House made no attempt to avoid hitting them. The officers responded by firing several shots at House's car. At this time, House accelerated and led police on the second phase of the chase.
House eventually turned down East 96th Street, which is a dead end street; there, House abandoned his vehicle and fled on foot through a nearby field. The officers gave chase and finally apprehended him. Following his arrest, House claims that police officers handcuffed him and then beat and kicked him with their hands, feet, flashlights, pistols, clubs and a brick.
The police transported House to the emergency room at St. Luke's Hospital, where he received treatment for various injuries including a concussion, lacerations to his head which required staples, a cut to his left ear which required stitches, three cracked ribs, a fractured sternum, and several bruises, cuts, and abrasions. House alleges that the police used excessive force during his arrest, and he filed a federal civil rights action against the police which the United States District Court stayed pending the outcome of the criminal proceedings against House.
On November 9, 1998, the grand jury indicted House for eight counts of felonious assault with peace officer specifications, one count of failure to comply with order or signal of police officer, one count of vandalism, and one count of driving under the influence.
Prior to trial, the state moved in limine for an order excluding evidence of alleged police brutality during the arrest of House. The trial court granted this motion, and on March 1, 2000, the court commenced the jury trial of this matter.
After deliberation, the jury returned a verdict finding House guilty of felonious assault with peace officer specifications as charged in counts three (Ed Plain), five (Donald Wellington), six (John Kraynik) and eight (Terrence Smith), guilty of one count of failure to comply with order or signal of peace officer, and guilty of one count of driving under the influence, but not guilty as to felonious assault as charged in counts one (Dwayne Duke), two (Ed Plain), four (Frank Woyma) and seven (Jack Steele), and not guilty of vandalism.
On July 7, 2000, the court sentenced House to consecutive prison terms of six years on counts three, five and six, concurrent with prison terms of six years for count eight, eighteen months on count nine and six months on count eleven, for an aggregate sentence of eighteen years.
House now appeals, raising eleven assignments of error for our review. The first states:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT AND ABUSED ITS DISCRETION BY GRANTING THE STATE'S MOTION IN LIMINE AND SUBSEQUENTLY PROHIBITING APPELLANT FROM INTRODUCING AND/OR ELICITING ANY EVIDENCE OF THE ARREST AND SUBSEQUENT BEATING OF APPELLANT BY MEMBERS OF THE CITY OF CLEVELAND POLICE DEPARTMENT, IN VIOLATION OF APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO CONFRONT WITNESSES, TO PRESENT A DEFENSE, AND TO DUE PROCESS OF LAW.
Prior to trial, the state moved in limine to have the trial court exclude any evidence that the Cleveland Police Department may have used excessive force during the arrest of House, which occurred subsequent to his criminal conduct. This evidence included pictures of House taken at the hospital after his arrest, his medical records, and the fact that internal investigation records indicate that at least three officers admitted to striking him during his arrest. The defense urges that this evidence of House's arrest is crucial to its theory of the case, which is that the officers lied about the events of the earlier chase, and that the criminal charges against House were filed in response to his civil allegations of police brutality.
The state maintains that any evidence of the arrest and beating of House would have been irrelevant to his prior criminal conduct, that this evidence is highly prejudicial, and that the defense merely wanted to use it to nullify the jury.
Pursuant to Evid.R. 401, relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Under Evid.R. 402, all relevant evidence is admissible. Even if relevant, Evid.R. 403(A) requires a court to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice.
Furthermore, R.C. 2945.03 provides:
 The judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue.
The trial court has broad discretion in admitting or excluding evidence. See State v. McGuire (1997), 80 Ohio St.3d 390, 400. The defense urges that the state filed criminal charges against House in response to his civil police brutality claims in federal court; however, neither the pendency of that case nor evidence of alleged police brutality is relevant or material to the issue of whether House committed the crimes of felonious assault of peace officers, failed to comply with order or signal of police officer or operated his vehicle under the influence, nor is it an affirmative defense to House's alleged conduct. Also, the prejudicial impact of this evidence would have greatly outweighed any probative value in using this evidence to impeach the credibility of the police officers who testified.
Both parties argue over the implications of Brady v. Maryland (1963),373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194. As the Court later stated in United States v. Bagley (1985), 473 U.S. 667, 682, 87 L.Ed.2d 481,105 S.Ct. 3375, Brady requires the disclosure only of "material" evidence, and evidence is "material" only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. As the state has pointed out, assuming arguendo that the police used excessive force and brutality during the arrest of House, this does not excuse his previous criminal liability — the only way that the disputed evidence would have changed the outcome of the trial is if it so poisoned the minds of the jury against the Cleveland Police Department that it resulted in jury nullification.
House correctly maintains that evidence concerning the credibility of a witness is covered by the Brady rule. Jean v. Rice (C.A. 4, 1991),945 F.2d 82, 87 n. 9. However, the making of a Brady request does not grant a criminal defendant "unfettered access to government files." United States v. Phillips (C.A.7, 1988), 854 F.2d 273, 276. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." United States v. Agurs (1976), 427 U.S. 97, 110-111, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342.
We have concluded that any evidence of alleged police brutality during the arrest of House had no material value to his guilt. Therefore, the trial court properly exercised its discretion in excluding this evidence. Accordingly, we overrule this assignment of error.
 II. THE TRIAL COURT ERRED BY NOT GRANTING THE DEFENSE'S MOTION TO SUPPRESS STATEMENTS OF THE APPELLANT.
 III. THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING THE STATE'S MOTION IN LIMINE AND PROHIBITING THE DEFENSE FROM RECEIVING THE CLEVELAND POLICE DEPARTMENT'S INTERNAL AFFAIRS FILE.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION BY PROHIBITING THE DEFENSE FROM RECEIVING THE PACE/WITHERS REPORT
 V. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PRECLUDED THE DEFENSE FROM INTRODUCING MR. HOUSE'S FULL STATEMENT TO THE FBI INTO EVIDENCE.
In the second, third, fourth and fifth assignments of error, House challenges various evidentiary rulings by the trial court. However, appellant failed to offer any legal authority to support these propositions as required by App.R. 16(A)(7). Accordingly, pursuant to App.R. 12(A)(2), we summarily overrule these assignments of error.
 VI. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PRECLUDED THE DEFENSE FROM HAVING OFFICER SMITH READ HIS ENTIRE STATEMENT INTO THE RECORD.
During the re-direct testimony of Officer Terrance Smith, the state had him read a portion of a statement he gave to the Professional Conduct/Internal Review Unit of the police department. (Tr. 1019-1022.) During re-cross, the defense attempted to have him read the remaining portion of the statement to the jury. The state objected, noting that the rest of the statement involved the arrest and alleged beating of House by police officers, which had been previously excluded by the court when it granted the state's motion in limine. The court sustained the state's objection.
House maintains that the court should have permitted the introduction of the remaining portions of this statement under the rule of completeness in Evid.R. 106, which states:
 When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it. (Emphasis added.)
Here, the remaining portions of Officer Smith's statement were not otherwise admissible — we have already concluded above that the trial court properly exercised its discretion in excluding evidence of police brutality during House's arrest. Accordingly, we reject this assignment of error.
 VII. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING THE DEFENSE EXPERT WITNESS, JOHN ISOLDI, TO TESTIFY CONCERNING POLICE POLICIES.
House also complains that the court improperly excluded the testimony of John Isoldi, a retired Lieutenant Post Commander with the Ohio State Highway Patrol, as an expert on whether the police followed their policies and procedures during this chase. The state asserts that Isoldi's testimony would have been confusing and misleading, and that it had no relevance to whether House committed the crimes charged.
In State v. Baston (1999), 85 Ohio St.3d 418, 423, the court set forth the standard of review for this issue, stating:
 Evid.R. 702(B) addresses the qualifications necessary to accord a witness "expert" status. Under the rule, a witness may qualify as an expert by reason of her knowledge, experience, skill, training, or education. Neither special education nor certification is necessary to confer expert status upon a witness. See State v. Boston (1989), 46 Ohio St.3d 108, 119, 545 N.E.2d 1220, 1231-1232. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge she possesses will aid the trier-of-fact in performing its fact-finding function. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 191, 616 N.E.2d 909, 915. Pursuant to Evid.R. 104(A), the trial court determines whether an individual qualifies as an expert, and that determination will be overturned only for an abuse of discretion. State v. Williams (1983), 4 Ohio St.3d 53, 58, 4 Ohio B. Rep. 144, 148, 446 N.E.2d 444, 448.
The record indicates that the defense proposed to use Isoldi's expert testimony to place the Cleveland Police Department on trial and turn the jury's attention away from House's own criminal conduct. As such, we have concluded that the trial court properly exercised its discretion in excluding this testimony, and we overrule this assignment of error.
 VIII. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE DEFENSE'S MOTION TO DISCLOSE GRAND JURY TESTIMONY.
On June 8, 1999, the defense filed a motion to disclose the grand jury testimony in case number CR-375221, containing an investigation of the officers' actions during the arrest of House and which resulted in a no bill. On appeal, the state characterizesthis tactic as merely another attempt by the defense to present his allegations of police brutality in an effort to absolve him of criminal liability.
Although grand jury proceedings are secret, see Crim.R. 6(E), an accused may inspect grand jury transcripts if the ends of justice require it and if he can show that he has a particularized need for them that outweighs the reasons for secrecy. State ex rel. Collins v. O'Farrell (1991), 61 Ohio St.3d 142, 143. The disclosure of grand jury testimony for use during trial is within the discretion of the trial court. State v. Greer (1981), 66 Ohio St.2d 139, paragraph one of the syllabus.
Here, House failed to show a particularized need for the requested grand jury testimony. Instead, the record indicates that the defense made this request to divert the jury attention from the case against him. We have concluded that the court properly exercised its discretion when it denied the defense's request in this regard, and therefore, we reject this assignment of error.
 IX. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE DEFENSE'S MOTION TO EXCLUDE BLOOD AND URINE RESULTS OF THE DEFENDANT AND BY ALLOWING EVIDENCE OF INACTIVE COCAINE METABOLITES TO BE PRESENTED.
House also claims that the trial court should have suppressed his alcohol screen which resulted in a .047, urging that R.C. 4511.19(D)(1) requires blood samples to be withdrawn within two hours to be admissible. In this regard, R.C. 4511.19(D)(1) provides:
 (D)(1) In any criminal prosecution or juvenile court proceeding for a violation of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, the court may admit evidence on the concentration of alcohol, drugs of abuse, or alcohol and drugs of abuse in the defendant's blood, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of the alleged violation. (Emphasis added.)
However, as the state points out, the grand jury did not indict House for a per se violation of R.C. 4511.19, and therefore, it did not utilize the presumption under subsection (D)(1). Instead, it presented other evidence, including expert testimony, that House violated the DUI statute. As the court stated in paragraph two of its syllabus in Newark v. Lucas (1988), 40 Ohio St.3d 100 :
 2. In a criminal prosecution for violation of R.C. 4511.19(A)(1), or of a municipal ordinance relating to operating a motor vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, the results of a properly administered bodily substances test presented with expert testimony may be admitted in evidence despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation. (Emphasis added.)
The court properly allowed the admission of the blood test in this case because the state presented it with expert testimony, as opposed to utilizing the presumption in R.C. 4511.19(D)(1). Therefore, the two-hour limitation in that subsection is inapplicable in this case.
Next, House challenges the admission of evidence of inactive cocaine metabolites in his system. House maintains that this evidence should have been precluded as irrelevant and highly prejudicial under Evid.R. 401, 402 and 403.
We agree with House's assertions that the presence of inactive cocaine metabolites, signifying that House had used cocaine in the past but was not under the influence of cocaine on the evening in question, had little if any probative value, and that this evidence should have been excluded. However, the admission of this evidence does not constitute reversible error unless we determine that, but for this evidence, the outcome of the trial would have been different. See Evid.R. 103(A). Upon review of the record, and based on the evidence presented in this case, we have concluded that the jury would have convicted House without the improper evidence of inactive cocaine in his system. Accordingly, we reject this assignment of error.
 X. THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE PROSECUTION TO QUESTION A DEFENSE WITNESS, PATRICIA DAVIS[,] REGARDING PAST DEALINGS WITH THE POLICE DEPARTMENT AND BY ALLOWING DETECTIVE BORNFELD TO GIVE IMPERMISSIBLETESTIMONY ALLEGING THAT PATRICIA DAVIS SPENT TIME IN JAIL AND THAT SHE HAD A POOR ATTITUDE AGAINST THE POLICE.
The defense presented the testimony of Patricia Davis, who claims to have witnessed the incident. During cross-examination, the prosecution asked her about allegations that she shot her husband. The defense objected, and the court sustained the objection and instructed the jury to disregard those comments. House argues on appeal that, The improper question asked by the prosecuting attorney was so egregious, and involved such a heinous act, that the mere act of asking the question * * * completely cast doubt on the credibility of Mrs. Davis.
To further impeach her credibility, the prosecution called Detective Jack Bornfeld, who testified about her previously displayed animosity and belligerent attitude towards him as a police officer. (Tr. 1651-1652.) In response to defense questions during cross-examination, Detective Bornfeld stated, It's quite [sic] obvious, she had some animosity toward the police. (Tr. 1652.) The defense objected, and the court ordered the statement stricken. Then, in response to a question by the court, the detective stated, Her attitude was very belligerent toward me when she came home and found me. (Tr. 1652.) House now blames the prosecution for these statements, claiming that the state improperly used extrinsic evidence, the rebuttal testimony of Detective Bornfeld, to attack the credibility of Mrs. Davis.
Finally, House challenges the court's decision to allow Detective Bornfeld to testify on re-direct, over objection by the defense, that Davis had spent time in jail.
Evid.R. 608(B) provides in part:
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. * * *
We agree that the prosecution improperly cross-examined Davis concerning the allegation that she had previously shot her husband. However, before she answered the question, the defense objected, and the court sustained the defense's objection and promptly instructed the jury to disregard the question. (Tr. 1541.) Accordingly, we reject this evidentiary challenge because, as noted by the Supreme Court of Ohio, Juries are presumed to follow the court's instructions, including instructions to disregard testimony. State v. Jones (2000),90 Ohio St.3d 403, 414. We have concluded that the court's curative instruction sufficiently remedied any prejudicial effect of this inappropriate question.
Likewise, the court struck Detective Bornfeld's comment about Davis' animosity toward the police. (Tr. 1652.) Further, the defense failed to object to his comment about her belligerent attitude towards him as a police officer. (Tr. 1652.) Therefore, House has waived all but plain error in this regard. See State v. Jones(2001), 91 Ohio St.3d 335, 343. "`Plain error does not exist unless, but for the error, the outcome at trial would have been different.'" Id., quoting State v. Joseph (1995),73 Ohio St.3d 450, 455.
Here, with the quality and quantity of independent evidence presented against House, we cannot conclude that the outcome of the trial would have been different but for the detective's comment about Davis.
As for evidence that Davis had spent time in jail, although inadmissible under Evid.R. 608(B), the admission of this evidence does not constitute reversible error because we have determined that this evidence also did not change outcome of the trial. See Evid.R. 103(A). Based upon the foregoing, we reject this assignment of error.
 XI. THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF APPELLANT BY IMPOSING CONSECUTIVE SENTENCES ON APPELLANT IN CONTRAVENTION OF STATUTORY FELONY SENTENCING GUIDELINES AS CONTAINED IN THE OHIO REVISED CODE.
Finally, House challenges his aggregate eighteen-year sentence, claiming that the court should have sentenced him to the minimum term for each count because it failed to make the necessary findings under R.C.2929.14(B). Further, he argues that the trial court failed to justify the imposition of consecutive sentences in this case. Finally, he contends that the record does not support his eighteen-year sentence, once again implying that his allegations of police brutality during his arrest somehow alleviate his criminal liability for his conduct during the chase.
R.C. 2929.14(B) states:
 (B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
In State v. Edmonson (1999), 86 Ohio St.3d 324, 326, the court considered R.C. 2929.14(B) and stated:
 We construe this statute to mean that unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence.
Further, R.C. 2929.14(E)(4) provides:
 (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
Here, the record reflects that the trial court made the following findings during the sentencing hearing:
 The Court wishes to explain this sentence on the record. This was not just a chase, but a chase that showed utter disregard for the lives of this community. It was a miracle that no one was killed. But this Court chalks that up to circumstance, not this defendant's outrageous behavior. We have come to a place in our law where we start putting labels on people. In sexual predator cases, we have classifications.
 Well, in this case, we have a person driving with no license, running traffic signals, stop signs, and when he finally has an opportunity to stop it all, he starts up again.
 I assert, Mr. House, that it is very logical to label you as a dangerous offender and a threat to this community and to the police department as a whole, therefore, I'm imposing this sentence in an effort to try to bring this community to a safer and more orderly manner of living. * * *
(Tr. 1868-1869.)
The state requests that we infer from this colloquy that the judge considered the seriousness of the offense and the need to protect the public from the appellant.
We have reviewed the record, and considering the statutory directives requiring specific findings, our view is that the court failed to satisfy the express requirements of R.C. 2929.14(B) and (E)(4).
Accordingly, we are constrained to vacate the sentences imposed in this case and remand this matter to the trial court for resentencing in accordance with R.C. 2929.14(B)
Judgment of conviction affirmed. Sentences vacated and matter remanded for resentencing.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J. and TIMOTHY E. McMONAGLE, J. CONCUR.