THE STATE OF OHIO, APPELLEE, *v.* WILLIAMS, APPELLANT.

[Cite as State *v.* Williams (1983), 4 Ohio St. 3d 53.]

54

(No. 82-528—Decided March 23, 1983.)

*Mr. John W. Allen,* prosecuting attorney, and *Mr. Gregory F. Locke,* for appellee.

*Mr. Harold E. Gibson,* for appellant.

CLIFFORD F. BROWN, J. This court has not previously ruled on the admissibility of voice analysis and identification testimony and exhibits in Ohio courts. That issue is directly raised here, both lower courts holding such evidence is proper under controlled conditions. For the reasons that follow, we agree and here conclude that the voice analysis and identification testimony and exhibits were demonstrated to be sufficiently reliable to be considered relevant and admissible evidence in this case.

Underlying all voice analysis is the principle that every speaker is idiosyncratic and individualistic, *i.e.,* that no two voices are alike. The spectrograph is an electromagnetic instrument which produces a visible record of sound of any description, but has been developed primarily to record voices. Sound is received by the spectrograph as input and transcribed onto a special paper wrapped around a rotating drum. Frequency, duration and intensity of the voice are represented on the output of the process, known as a spectrogram.

The spectrograph operator typically is provided two tapes, one with a known and the other with an unknown voice. The operator first listens to the tapes, then chooses similar words or phrases to use as input. Spectrograms of the same words and phrases are then compared visually to determine whether they were made by the same speaker. Taken into consideration when attempting a "match" are the fidelity of the source, the number or length of sample words and the conditions under which the recordings were

made. The operator will then make either an absolute identification, absolute elimination, probable identification, probable elimination or no decision.[3]

Various federal and state courts have previously considered the admissibility of spectrographic analysis for purposes of identification, with varying results. See, *e.g., United States* v. *Williams* (C.A. 2, 1978), 583 F.2d 1194, certiorari denied (1979), 439 U.S. 1117 (held admissible); *United States* v. *McDaniel* (C.A. D.C. 1976), 176 U.S. App. D.C. 60, 538 F. 2d 408 (held not admissible); *United States* v. *Baller* (C.A. 4, 1975), 519 F. 2d 463, certiorari denied (1975), 423 U.S. 1019 (held admissible); *United States* v. *Williams* (S.D. N.Y. 1977), 443 F. Supp. 269 (held admissible); *United States* v. *Sample* (E.D. Pa. 1974), 378 F. Supp. 44 (held admissible in probation revocation hearing); *Reed* v. *State* (1978), 283 Md. 374, 391 A. 2d 364, 97 A.L.R. 3d 201 (held not admissible); *State* v. *Williams* (Me. 1978), 388 A. 2d 500 (held admissible); *People* v. *Tobey* (1977), 401 Mich. 141, 257 N.W. 2d 537 (held not admissible); *Commonwealth* v. *Topa* (1977), 471 Pa. 223, 369 A. 2d 1277 (held not admissible); *People* v. *Kelly* (1976), 17 Cal. 3d 24, 549 P. 2d 1240 (held not admissible).

Just as the results differ from jurisdiction to jurisdiction, the standards for admitting such evidence also vary. The earliest pronouncement on the admissibility of recently ascertained or applied scientific principles can be found in *Frye* v. *United States* (1923), 54 U.S. App. D.C. 46, 47, 293 F. 1013, 1014:

"* * * Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs."[4]

The *"Frye* test" is usually construed to require a survey of scientific opinion as to the general acceptance and reliability of the process. As stated in *United States* v. *Addison* (C.A. D.C. 1974), 498 F. 2d 741, 744:

"* * * [T]he *Frye* test protects prosecution and defense alike by assuring that a minimal reserve of experts exists who can critically examine the validity of a scientific determination in a particular case. Since scientific proof may in some instances assume a posture of mystic infallibility in the

---

[3] For a detailed discussion of the mechanics of speech, spectrographs and spectrograms, see Moenssens, Moses & Inbau, Scientific Evidence in Criminal Cases 507-523 (1973); 19 American Jurisprudence Proof of Facts 423-441, Spectrogram Voice Identification (1967).

[4] *Frye* held that the forerunner of the polygraph had not yet achieved general recognition and acceptance among psychologists and physiologists so as to support the admission in evidence of expert testimony relative thereto. This court has previously announced the requisite conditions for admissibility of the results of a polygraphic examination in *State* v. *Souel* (1978), 53 Ohio St. 2d 123 [7 O.O. 3d 207]. Nothing in this case should be construed to weaken in any way the continued vitality of the *Souel* holding.

eyes of a jury of laymen, the ability to produce rebuttal experts, equally conversant with the mechanics and methods of a particular technique, may prove to be essential."

The *"Frye* test" has been criticized, however, by courts[5] and commentators alike. As stated by Professor McCormick:

"* * * 'General scientific acceptance' is a proper condition for taking judicial notice of scientific facts, but not a criterion for the admissibility of scientific evidence. Any relevant conclusions which are supported by a qualified expert witness [footnote omitted] should be received unless there are other reasons for exclusion. Particularly, probative value may be overborne by the familiar dangers of prejudicing or misleading the jury, and undue consumption of time. If the courts used this approach, instead of repeating a supposed requirement of 'general acceptance' not elsewhere imposed, they would arrive at a practical way of utilizing the results of scientific advances." (Footnotes omitted.) McCormick, Evidence (2 Ed., Cleary Ed. 1972) 491, Section 203.

The Sixth Circuit Court of Appeals has recognized that, given the " 'considerable area of discretion on the part of the trial judge in admitting or refusing to admit' ." such evidence, "[i]f a scientific process is reliable, or sufficiently accurate, courts may also deem it 'generally accepted.' " *United States* v. *Franks* (C.A. 6, 1975), 511 F. 2d 25, 33, certiorari denied (1975), 422 U.S. 1042, 1048. In holding spectrographic analysis evidence admissible, the *Franks* court merely required that the process be relevant and reliable.

Although the parties in this case urge this court to adopt one of the special tests described above and establish a concrete rule on admissibility of voice analysis and identification testimony, we endorse a more flexible standard derived from this state's Rules of Evidence. This third and preferable approach to spectrographic evidence was first adopted by the Supreme Judicial Court of Maine in *State* v. *Williams, supra.* That court refused to adopt a special rule for scientific evidence, preferring instead to follow the "fundamental philosophy of our Rules of Evidence, as revealed more particularly in Rules 402 and 702, generally favoring *admissibility* of expert testimony whenever it is relevant and can be of assistance to the trier of fact." *Williams, supra,* at 503.

Evid. R. 402 provides:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the

---

[5] The *"Frye* test" has been criticized and rejected by the Supreme Judicial Court of Maine in *State* v. *Williams, supra,* which suggested that *Frye* be limited to the original context in which it was decided, lie detector tests. The *"Frye* test" was rejected by the Supreme Court of Louisiana . in a polygraph case, *State* v. *Catanese* (La. 1979), 368 So. 2d 975, and by the Supreme Court of Iowa in a case involving admissibility of blood stain analysis, *State* v. *Hall* (Iowa 1980), 297 N.W.2d 80. This court has never adopted the *"Frye* test," but, see, *State* v. *Olderman* (1975), 44 Ohio App. 2d 130.

Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."

Evid. R. 702 makes specific reference to the admissibility of scientific testimony:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

We note, also, that Evid. R. 403 mandates exclusion of relevant evidence if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury, and that relevant evidence may be excluded in consideration of undue delay or needless presentation of cumulative evidence.[6]

Like our counterpart in Maine, we refuse to engage in scientific nose-counting for the purpose of deciding whether evidence based on newly ascertained or applied scientific principles is admissible. We believe the Rules of Evidence establish adequate preconditions for admissibility of expert testimony, and we leave to the discretion of this state's judiciary, on a case by case basis, to decide whether the questioned testimony is relevant and will assist the trier of fact to understand the evidence or to determine a fact in issue.

Given the criteria of admissibility thus decided, we consider whether the trial court erred by admitting the spectrographic testimony and exhibits into evidence.

Dr. Henry Truby, Chairman of the Board of Directors of the International Organization of Voice Identification, which certifies all qualified voice analysts, and holder of a Ph.D. in Acoustic Phonetics, testified concerning the history and mechanics of voice identification.

Dr. Truby testified that "if the sample is clear and of high fidelity and adequate to the determination by investigating * * * then it's beyond any question that you can make a positive identification or positive pattern matching." He also stated that a body of scientists, technicians and technologists has developed since World War II in the field of voice identification, that an international organization devoted to establishing standards of certification has been established, and that within this community of scientists, the reliability of voice identification is without dispute.

The state then called Detective Lieutenant Lonnie Smrkovski, a member of the Acoustical Society of America, the American Academy of Forensic Sciences, the International Association for Identification and the Interna-

---

[6] The Rules of Evidence contemplate the use of voice identification testimony by requiring as a condition precedent to admissibility that such testimony include specification of the circumstances connecting the voice with the alleged speaker. Evid. R. 901(B)(5). This rule addresses only voice identification testimony grounded on *hearing* the speaker, not *spectrographic* voice analysis.

tional Association of Voice Identification. He has been certified by the latter organization to render opinions and testify in court. In fact, Lt. Smrkovski has testified approximately twenty-five times in eighteen states, including Ohio, and twice in Canada.

Lt. Smrkovski testified that, in this case, he prepared sixty to eighty spectrograms, spending at least sixty hours analyzing the known and unknown tapes, which he found to be of good fidelity. He stated:

"It's my opinion that the questioned voice in this case and the alleged known voice presented to me identified as Mr. Mose Williams are one and the same. * * * I made a positive identification in this case and I am absolutely convinced beyond a reasonable doubt that these voices belong to the same speaker. Were I less sure than that, I would not have arrived at that conclusion."

In view of the unrebutted evidence of reliability of voice identification in general, and of Lt. Smrkovski's analysis in particular, we conclude it was not error for the trial court to admit the expert voice identification testimony and exhibits in this case. There was sufficient demonstration of "reliability" adduced at trial to qualify the evidence as "relevant" within the meaning of Evid. R. 402, and to qualify Lt. Smrkovski as an expert witness as provided in Evid. R. 702.

We emphasize, however, that once the court determines admissibility, the jury remains at liberty to reject voice identification evidence for any number of reasons, including a view that the spectrographic voice identification technique itself is either unreliable or misleading.[7] We approve of the introduction, as here, of the original tapes used by Lt. Smrkovski, and the playing of the tapes for the jury, so they could hear for themselves the voice(s) at issue.

Having found no error in the admission of the disputed evidence, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES and J. P. CELEBREZZE, JJ., concur.

---

[7] We note that the trial judge instructed the jury as follows concerning the weight to be given to the spectrographic evidence:

"* * * Generally a witness may not express an opinion. * * * However, one who follows a profession or certain line of work may express his opinion because of his education, knowledge and experience, if such testimony is admitted for whatever assistance it may provide you to arrive at a just verdict. Now, as with other witnesses, however, upon you alone rests the duty of deciding what weight should be given to the testimony of experts. In determining its weight you may take into consideration not only the usual rules that I have provided to you but in addition to that the expert's skill, experience, knowledge, veracity, his familiarity with the facts of this case and from that determine the weight to be given to the testimony of that expert. * * * "