**State v. Pierce**
*[Cite as 5 AOA 85]*

*Case No. 89-CA-30*
*Delaware County, (5th)*
*Decided July 9, 1990*

*George E. Lord, Ass't Prosecuting Attorney, 20 W. Central Avenue, Delaware, Ohio 43015, for Plaintiff-Appellee.*

*O. Ross Long, 125 North Sandusky Street, Delaware, Ohio 43015, for Defendant-Appellant.*

MILLIGAN, P.J.

A Delaware County Common Pleas Court jury found defendant Louis Pierce, Jr., guilty of rape, January 4, 1988, rape, May 22, 1988, and kidnapping, June 6, 1988.

Following sentence, he appeals assigning two errors:

### ASSIGNMENT OF ERROR NO. I
THE TRIAL COURT COMMITTED ERROR BY ALLOWING INTO EVIDENCE, THE OPINION TESTIMONY AND EXHIBITS OF THREE STATE WITNESSES CONCERNING THE RESULTS OF CERTAIN DNA TESTING CONDUCTED BY CELLMARK DIAGNOSTICS, INC., OF GERMANTOWN, MARYLAND,

### ASSIGNMENT OF ERROR NO. II
THE EVIDENCE PRESENTED TO THE JURY ON THE KIDNAPPING COUNT WAS INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH THE OFFENSE OF KIDNAPPING UNDER SECTION 2905.01 OF THE OHIO REVISED CODE.

On January 4, 1988, a high school student was raped at knife point on her way to school. A rape kit and samples were procured at the hospital.

On May 2, 1988, another high school victim, sun bathing at Delaware State Park, was raped at knife point by a masked offender. A rape kit was completed at the local hospital.

The first rape victim identified the appellant as the rapist at trial. The second victim identified appellant from a photo array, from his eyes, nose, and cheeks. The victim's companion also identified appellant from a photo array.

Through vehicle identification, law enforcement officers eventually recovered items of clothing of the appellant from his home.

The rape kit, together with samples of clothing and blood exemplars from the appellant, were sent to Cellmark Labs, Germantown, Maryland, for DNA analysis.

The circumstances surrounding the kidnapping will be discussed at assignment of error number two.

### I

The appellant challenges the admissibility of DNA testing to prove identity of an actor as a generic matter. He also challenges the adequacy of the evidence in this case, particularly as relates to its relevance.

This is a case of first impression in Ohio.

### DNA Testing - Admissibility

The Supreme Court of Virginia and Minnesota have addressed this question.

The Supreme Court of Minnesota decided that forensic DNA testing had gained general acceptance in the scientific community, and the admissibility of test results in a particular case would hinge on the procedures used by the laboratory in performing the test. *State v. Schwartz* (1989), 447 N.W.2d 422, 428.

Based on the testimony of expert witnesses as to the accuracy of DNA testing and the reliability of the testing procedures used by--the laboratory in performing the test, the Supreme Court of Virginia held that DNA evidence was properly admitted at trial. *Spencer v. Commonwealth* (1989), 384 S.E.2d 775, 783.

(The availability of DNA testing as a more focused determinate was recognized by the Ohio Supreme Court in *State v. Apanovitch*, (1987), 33 Ohio St.3d 19, 30 at fn.4, 514 N.E.2d 394, 405 (Brown, concurring).

The more liberal rule of evidence with respect to opinion testimony is encompassed in Article 7, Ohio Rules of Evidence.

### "RULE 702. TESTIMONY BY EXPERTS

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may

testify thereto in the form of an opinion or otherwise.

### "RULE 703. BASES OF OPINION TESTIMONY BY EXPERTS

"The facts or date in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing.

### "RULE 704. OPINION ON ULTIMATE ISSUE

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact.

### "RULE 705. DISCLOSURE OF FACT OR DATA UNDERLYING EXPERT OPINION

"The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."

Upon an examination of the scientific literature, the judicial review of the process, and legal commentary, we are satisfied, given appropriate foundation and compliance with acceptable standards, DNA testimony of both inclusion and exclusion is admissible pursuant to Civ. R. 702, et seq.[1]

#### DNA Testing - Adequacy of Foundation and Relevance

Three experts testified relative to the DNA tests.

(There are no challenges to the integrity of the evidence examined or the chain of evidence. The challenge goes to the sufficiency, and hence the relevance of the expert opinions.)

Appellant concedes that each of the three witnesses is an expert in his particular field.

Witness Bonnie Blomberg, microbiologist at the University of Miami, explained DNA; opined that the DNA of each individual is different (with the exception of identical twins). T.374. She visited the Cellmark lab and observed the procedure for preparing the audiorad, State's Exhibit 52. She opined that the sperm samples taken from the separate rape kits contained DNA banding patterns that match the DNA banding patterns from appellant's blood. T.414. She further testified that the probability would be one in forty billion "that the match would be to a random occurrence." T.421. (Appellant's argument that the particular report upon which this opinion is given was not offered in evidence does not avail. That is a question of credibility.)

Karen Rubenstein, staff molecular biologist for Cellmark, testified that she performed the various screening procedures resulting in the audiorad used for comparison. She corroborated Rubenstein's testimony that the bands created by the rape kit samples matched the blood samples of the appellant.

Appellant challenges the relevance of the "match" testimony, arguing that no one made such evidence relevant by testifying that the match meant that the appellant is donor of both the rape kit samples and the blood samples of DNA. However, the third witness, Dr. Daniel D. Gardner, director of laboratories at Cellmark, testified:

"In my opinion, those two DNA banding patterns match. In other words, it is the same DNA banding pattern. The DNA is from the same individual." T.530.

Appellant further argues that the credibility and relevance of this evidence is fatally flawed because the conclusory opinion is based on evidence not offered at trial. He claims a population geneticist would have to present population genetics evidence or data base. (He points out that the State presented no evidence that appellant did not have an identical twin.)

We have examined the entire transcript of these three witnesses and conclude that, in sum, their testimony established an adequate foundation for the admissibility of DNA results generically to establish and exclude identification, established an adequate foundation for the testing administered in this case, demonstrated areas of expert competence sufficient to deal with an opinion with credibility (including an adequate knowledge of population genetics), used procedures designed to produce reliable results, and identified the appellant as the offender.

Expert testimony is admissible if the expert's testimony is based on facts within the witness' personal knowledge or on facts in evidence. State v. Chapin (1981), 67 Ohio St.2d 437, at - syllabus 2, 424 N.E.2d 317; State v. Jones (1984), 9 Ohio St.3d 123, at syllabus, 459 N.E. 2d 526. It is within the sound discretion of the trial judge, on a case-by-case basis, to decide if expert testimony is relevant and will assist the trier of fact to understand the evidence or determine a fact in issue. State v. Williams (1983), 4 Ohio St.3d 53, at syllabus, 446 N.E.2d 444. Karen Rubenstein performed testing on the samples used in this case. Dr. Daniel Gardner is the

director of the laboratory which performed the test. Dr. Bonnie Blomberg teaches DNA testing procedure, and has observed the procedures used by the Cellmark lab. All three of these witnesses had sufficient personal knowledge of the facts concerning which they testified to allow them to testify about the testing. It was well within the trial court's discretion to allow such expert testimony.

In making this conclusion, we are aware of the concern expressed by the Minnesota Supreme Court with respect to the want of published guidelines and methodology by Cellmark. *Schwartz, supra,* p.426-28.

The first assignment of error is overruled.

## II

Appellant challenges the weight and sufficiency of the evidence to sustain a charge of kidnapping on June 6, 1988. The gist of his argument is that there was but a "brief restraint" and that there was no "showing as to the defendant's intent to terrorize or inflict serious physical harm." Appellant's brief, p.22.

We conclude that where the victim testified that appellant ordered her to walk a certain way because "I have a gun," T.580, ordered her to "shut up, I have a gun," T.581, and upon resisting the offender, appellant continued to pull on her saying, "I have a gun," T.581, and that she was petrified even after she struck him with keys, there is sufficient evidence for the jury to conclude that appellant violated the provisions of the Ohio Kidnapping Law, R.C. 2905.01(A) (3). The verdict is not against the weight of the evidence. The second assignment of error is overruled.

The judgment of the Delaware County Common Pleas Court is affirmed.

HOFFMAN, J., and SMART, J. concur.

---

[1] An exhaustive examination of the issue may be found in *New York v. Joseph Castro,* Supreme Court of the State of New York, County of Bronx, Criminal Term Part 28, Indictment No. 1508/87, 8/14/89, unreported.