The STATE of Ohio, Appellant and Cross–Appellee,

v.

LOWE, Appellee and Cross–Appellant.

[Cite as *State v. Lowe* (1991), 75 Ohio App.3d 404.]

Court of Appeals of Ohio,
Logan County.

No. 8–91–6.

Decided July 31, 1991.

*Gerald L. Heaton,* Prosecuting Attorney, for appellant and cross-appellee.

*Dennis Day Lager* and *Marc S. Triplett,* for appellee and cross-appellant.

*Per Curiam.*

The state of Ohio appeals from a judgment entered in the Court of Common Pleas of Logan County granting a motion to suppress filed by defendant-appellee, Terry Lowe.

Defendant was indicated by the Logan County Grand Jury for the aggravated murders of Phyllis Mullet and Belle Center Marshal Murray Griffin. On July 5, 1986, Phyllis Mullet was murdered in her home in Belle Center, Ohio. Mullet was stabbed multiple times in the chest area and her throat was slit. When found, Mullet's body was clad in a sweatshirt only.

The body of Griffin was found in the upstairs hall of Mullet's home. Griffin died from gunshot wounds which he apparently sustained at the hand of Mullet's murderer during the marshal's attempt to rescue Mullet.

In response to the defendant's request for notice of intention to use evidence at trial, the state filed a notice of intention to use "the testimony of * * * officers from the Behavioral Science Unit of the Federal Bureau of Investigation who will testify concerning crime scene characteristics for the purposes of assisting in the identification of the Defendant as the perpetrator." The defendant responded to the state's notice of intention with a pretrial motion to suppress any testimony by any state's witness regarding "establishment of a psychological or personality profile of the perpetrator of the crimes charged, based upon crime scene analysis."

At the hearing convened upon defendant's motion, the state introduced the testimony of Agent John Douglas. Douglas is a twenty-year employee of the

Federal Bureau of Investigation ("FBI") who currently works within the National Center for Analysis of Violent Crime at the FBI Academy.

The goal of the testimony elicited from Douglas by the state was to establish Douglas's expertise in the field of criminal-investigative analysis and psycholinguistic analysis [1] and to determine his opinion regarding the perpetrator's motivation for the murder of Mullet, as well as the motivation for a certain writing authored by defendant. The state contended that Douglas's opinion testimony on these issues should be admitted into evidence at defendant's trial.

On direct examination, Douglas testified that criminal-investigative analysis is a process through which the crime scene is examined to determine the perpetrator's motivation for the crime. Douglas further testified that he has utilized crime-scene analysis as an investigative tool on over five thousand occasions. With respect to psycholinguistic analysis, Douglas testified that this analysis is used to discern both the underlying motivation for a particular writing and the potential for violence by the author of the writing.

As pertains to the case before us, Douglas examined the crime-scene photographs, autopsy protocols, and police reports. In addition, the agent examined a document authored by defendant which consisted of a list of women, the names of their husbands and the names of their children. The murder victim, Mullet, was included on the list of females. Although the document contained sexual language concerning at least one female on the list, there was no overt sexual language regarding Mullet.

Douglas testified that, based upon his review of the crime scene materials, he was of the opinion that the motivation for the death of Mullet was sexual. Douglas stated that his opinion in this regard was premised on the fact that Mullet's hands and feet were bound with ligatures that had been brought to the scene by the perpetrator of the crime. Douglas was of the opinion that the presence of the ligatures indicated preplanning on the part of the perpetrator. Douglas further testified that preplanning is one of several characteristics of a sexually motivated homicide.

As concerns the document that was authored by the defendant, Douglas testified that the writing was sexually motivated and represented defendant's plan or mission for power.

Upon cross-examination by defense counsel, Douglas acknowledged that his educational background consists of a bachelor's degree in physical education. Douglas also holds a master's degree in educational psychology, with an

---

1. Psycholinguistic analysis is also known as death-threat analysis.

emphasis in counseling, and a doctorate in education. Douglas further acknowledged that, when concluding that an offender's motivation is sexual, he must make psychological inferences to draw those conclusions and therefore is engaging in a form of psychology. There was considerable dispute over whether Douglas was really attempting to draw a psychological profile of defendant as opposed to merely expressing investigative conclusions resulting from his analysis of crime-scene evidence. In any event, Douglas conceded that none of his testimony, whether related to the motivation for the murder of Mullet or the motivation for defendant's writing, could be stated to a reasonable scientific certainty.

Additionally, defendant elicited the testimony of Dr. Solomon Fulero, who is a licensed psychologist and a professor of psychology, to rebut Douglas's testimony elicited on direct examination. Fulero corroborated the conclusion of Douglas that opinions based on criminal-investigative analysis do not rise to the level of reasonable scientific certainty that is a prerequisite to consideration as expert opinion testimony.

The trial court granted defendant's motion to suppress. Upon certification of its inability to proceed to trial without the suppressed evidence, the state appealed the judgment assigning one error as follows:

"The trial court erred in granting the motion of the defense to exclude the testimony of Special Agent John Douglas regarding crime scene analysis and threat analysis."

The syllabus in *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444, reads as follows:

"The Ohio Rules of Evidence establish adequate preconditions for admissibility of expert testimony, such as spectrographic voice analysis. It is within the sound discretion of the state's judiciary, on case by case basis, to decide whether such testimony is relevant and will assist the trier of fact to understand the evidence or to determine a fact in issue."

Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 provides in pertinent part that "[a]ll relevant evidence is admissible * * *. Evidence which is not relevant is not admissible."

As regards the relevancy of expert testimony, the court in *Williams, supra,* at 59, 4 OBR at 149, 446 N.E.2d at 448 established that there must be a

"sufficient demonstration of 'reliability' * * * to qualify the evidence as 'relevant' within the meaning of Evid.R. 402." [2]

In the case before us, the trial court suppressed the testimony of Douglas upon finding, *inter alia*, that "Mr. Douglas' opinion is an investigative tool like a polygraph; it might be used to investigate, but it does not have the reliability to be evidence." Having given careful consideration to the testimony elicited in this matter, we conclude that there is evidence in the record to support the trial court's finding that the opinion testimony of Douglas is not reliable evidence.

As a whole, the record reflects that Douglas's opinion for the most part is based on the behavioral science of clinical psychology, an area in which he has no formal education, training or license. In short, the purported scientific analytical processes to which Douglas testified are based on intuitiveness honed by his considerable experience in the field of homicide investigation. While we in no way trivialize the importance of Douglas's work in the field of crime detection and criminal apprehension, we do not find that there was sufficient evidence of reliability adduced to demonstrate the relevancy of the testimony or to qualify Douglas as an expert witness. Accordingly, the error as assigned by the state is overruled.

█ Defendant cross-appeals from the judgment of the trial court and raises the following assignment of error:

"The trial court erred in ruling that its exclusion of the testimony of State's expert witness John Douglas is applicable only as the case is currently charged as a capital offense."

In the final sentence of the judgment entered suppressing the testimony of Douglas, the trial court stated that "[t]his ruling is applicable only to this case as it is currently charged as a capital offense." Upon consideration, we hold that the matter asserted by defendant on his cross-appeal is premature in that the trial court has made only a preliminary ruling concerning the future use of the disputed evidence. Simply put, the ruling lacks finality and thus is not a proper subject for appeal. Defendant's assignment of error as raised on cross-appeal is overruled.

Finding no error as assigned or argued, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT, P.J., EVANS and SHAW, JJ., concur.

---

2. "Additionally, under Evid.R. 403(B), the trial court retains discretionary authority to exclude even relevant evidence if that evidence would unduly waste time or confuse issues at trial." *State v. Buell* (1986), 22 Ohio St.3d 124, 133, 22 OBR 203, 211, 489 N.E.2d 795, 804.