OPINION
Defendant-Appellant Cory E. Holland appeals the judgment of the Court of Common Pleas, Allen County denying his motion for mistrial and excluding certain expert witness testimony.
At approximately 1 p.m. on April 19, 1999 a man entered the Home Service Dry Cleaners on W. Market Street in Lima and in an apparent intent to rob the establishment, stabbed Home Service employee, Dorothy Miller. Miller died shortly after arriving at the hospital.
A subsequent investigation led police to the defendant-appellant, Cory Holland. The Allen County Grand Jury indicted Holland on March 28, 2000 on one count of aggravated murder in violation of R.C. 2903.01(B) and one count of aggravated robbery in violation of R.C. 2911.01(A)(3). A jury trial commenced on October 23, 2000.
At trial, the State, in the absence of physical evidence linking the defendant to the crime, presented the testimony of five eyewitnesses who placed the defendant at the drycleaners on the day of the homicide. The first witness, Ron Gorby, testified that sometime during the course of the attempted robbery, he entered the dry cleaners and was surprised to find the front counter unmanned. He called out for Miller and waited for her to come out of the back room. Gorby testified that soon thereafter he observed a black male emerge from the back room with a cash register in his arms. The man threw the cash register at Gorby and fled the scene. The cash register missed Gorby and he was able to run out of the dry cleaners to observe the perpetrator flee across W. Market Street towards the Rite Aid drug store. Gorby described the suspect to police as a black male, approximately 30 years old, wearing a black and white checkered flannel shirt with black pants. At trial, Gorby identified the defendant-appellant as the man he saw in the dry cleaners that day.
The State's second witness was Linda Frantz, an employee of Lima Medical, which is situated next to the Home Service Dry Cleaners. Frantz testified that some time around 1 p.m. on the day in question she was in her vehicle, parked in front of the dry cleaners, eating lunch with her husband. While eating, she observed a black male wearing a white and black-checkered shirt with black pants and an unlit cigarette in his mouth go in to the dry cleaners and quickly leave again. A short while later, the same man went back into the dry cleaners. Frantz testified that after a few minutes she saw the same man come running out of the dry cleaners and another man was chasing him. Frantz made an in court identification of the defendant-appellant as the man she witnessed going into and running out of the dry cleaners on April 19, 1999.
A third witness, Georgia Smith, told police that she was driving down W. Market street sometime after 1 p.m. on the day of the murder. Smith testified that a black male wearing a black and white checkered shirt and black or blue pants ran across the road in front of her car. She explained that she was able to stop the car before hitting the man, but not before he was less than two feet in front of her. Afterwards, she observed the man run towards the Rite Aid drug store. At trial, Smith identified the defendant-appellant as the man who ran in front of her car.
The fourth witness, Clarence Daniels, testified that he gave the defendant-appellant a ride to the west side of Lima on the day of the murder. According to Daniels, Holland got out of the car in an alley near the Shell Station on W. Market Street. There was conflicting testimony as to what time Daniels dropped Holland off. Daniels testified that before getting out of the car, Holland asked him for a cigarette. Daniels further testified that the defendant was wearing a black and white checkered shirt when he dropped him off but that when he ran across him later in the day, Holland had changed his shirt and was wearing a ball cap.
The State's final eyewitness was William Powell, an acquaintance of the defendant-appellant. Powell testified, at trial, that he saw the defendant on the day of the murder running across W. Market Street towards the Rite Aid drug store. Powell stated that he saw Holland run in front of a car that stopped just before hitting him. Powell further stated that Holland was wearing a black and white checkered shirt.
Two other witnesses testified at trial that Holland confessed to them, at separate times, that he had only meant to rob the dry cleaners and that he had panicked and stabbed the victim when she lunged at him.
During the presentation of the defense, Holland proffered the testimony of an expert in eyewitness identification. The trial court denied the request and excluded the testimony.
On November 3rd, 2000 the jury returned a verdict of guilty and the defendant was subsequently sentenced to life in prison without the possibility of parole. On November 6, 2000 the defense moved for a mistrial alleging that the State had withheld exculpatory evidence, specifically, the statement of a witness who claimed to have seen a man, who was not Cory Holland, fleeing the scene of the crime. The court held a hearing on the merits and denied the motion.
The defendant-appellant raises the following assignments of error:
 The trial court erred in denying the defendant's motion for mistrial
 The trial court abused its discretion by excluding the expert witness in eyewitness identification.
 The trial court committed an error of law by excluding defendant-appellant's expert witness resulting in a denial of his due process rights under the Fifth Amendment, Sixth Amendment and Fourteenth Amendment to the Ohio and United States Constitutions.
 First Assignment of Error
In his first assignment of error, the defendant-appellant alleges that the trial court erred when it denied his motion for mistrial. Appellant moved for a mistrial based on allegations that the State had withheld exculpatory evidence from the defense, thereby denying the appellant a fair trial.
On the same day the jury returned the verdict, a secretary at defense counsel's law office took a phone call from Alice England. England told the secretary that she was an eyewitness to the events involving the murder of Dorothy Miller. England further indicated that she told police nearly a year ago that the defendant was not the person she saw coming out of the dry cleaners on the day of the homicide.
The trial court held a hearing on November 7th, 2000 at which the State presented evidence showing that the police questioned Alice England during their investigation into Dorothy Miller's homicide. The state presented a police report detailing the investigation into Alice England's story.
England told police that she was at a Frank's Car Wash on W. Market Street washing her car on the day of the murder. She stated that when she left the car wash she was traveling eastbound on W. Market Street when she saw a black man in a black and white flannel shirt running from the direction of the dry cleaners. According to England, the man she saw was not the defendant-appellant. The police report goes on to state that John Forrest, manager of Frank's Car Wash, confirmed that the car wash was closed on April 19, 1999. The report concludes that England was not a witness to the crime.
Criminal Rule 33(A) states in relevant part:
 A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
 (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial * * *.
The granting or denying of a mistrial under Crim.R. 33 rests within the sound discretion of the trial court and such a decision will not be disturbed absence abuse of that discretion. State v. Sage (1987),31 Ohio St.3d 173, 180. The granting of a mistrial is only necessary where a fair trial is no longer possible. State v. Franklin (1991),62 Ohio St.3d 118. A mistrial should not be granted merely because some minor error or irregularity has arisen. State v. Reynolds (1988),49 Ohio App.3d 27, 33.
In a judgment entry dated November 7, 1999 the trial court denied Holland's motion for a mistrial finding that there was no evidence of prosecutorial misconduct. The trial court concluded that the prosecution had complied with all discovery requirements throughout the trial and that the defense had admitted to having Alice England's name. The court further found that the statement by Alice England did not amount to new evidence warranting a new trial since there was no likelihood that her testimony would have led to a different trial result.
The trial court relied on the Ohio Supreme Court's ruling in State v.Seiber (1990), 56 Ohio St.3d 4, in which the court stated:
 "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." Id. at 17.
The defendant-appellant does not take issue with the trial court's determination that the state did not commit misconduct. Rather, he argues that since the only evidence linking him to the crime was eyewitness testimony, the addition of another eyewitness would be relevant and material to the case.
Holland's argument is not well taken for two reasons. First, the trial court concluded that Alice England was not in fact an eyewitness to the crime when it stated:
 "The defense contends indirectly that Alice England's eyewitness testimony would refute the testimony of Ron Gorby, Linda Frantz, Georgia Smith, and Billy Powell. The court does not agree. Four separate witnesses identified the defendant (one of which knew the defendant and had seen him earlier in the day.)
 Most relevant, however, is the fact that Ms. England did not speak to the authorities for six months after the incident; the description was entirely different from those testified to and the facts that she claimed she had just gotten her car washed at Frank's Car Wash when she observed the individual. Yet Frank's Car Wash was closed on April 9, 1999. "
Second, the test for a mistrial based on new evidence is more than just relevance or materiality. According to the test handed down in Seiber,
the appellant must show a strong probability that the new evidence would have changed the trial results. The defendant-appellant fails to demonstrate any such probability.
Based on the evidence in the record and the trial court's reliance on sound law, the trial court did not abuse its discretion. Accordingly, defendant-appellant's first assignment of error is overruled.
 Second Third Assignment of Error
In his second and third assignments of error, Holland alleges that the trial court abused its discretion by excluding the testimony of an expert witness in eyewitness identification and, thereby, denying him of his due process rights under the Fifth Amendment, Sixth Amendment and Fourteenth Amendment to the Ohio and United States Constitutions.
The defendant-appellant argues that the trial court's decision violated the Ohio State Supreme Court's holding in State v. Buell (1986),22 Ohio St.3d 124. In Buell, the court held that expert testimony as to the factors and variables that may impair the accuracy of an eyewitness is admissible under Evid.R.702 to assist the trier of fact. Id. at 131. The court also held that testimony regarding the credibility of the identification testimony of a particular witness is inadmissible under Evid.R. 702, absent a showing that the witness suffers from a mental or physical impairment which would affect the witness' ability to observe or recall events. Id. at 133. (emphasis added)
In the case at bar, the trial court did not rule that the proffered testimony of the expert was inadmissible as a matter of law. Rather the trial court determined that under the particular facts of this case, the testimony would not aid the trier of fact.
The decision whether testimony is relevant and will assist the trier of fact is within the discretion of the trial court. State v. Williams
(1983), 4 Ohio St.3d 53, 446 N.E.2d 444, syllabus. Furthermore, the trial court must follow the basic mandates of Evid.R. 702 which states:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by laypersons or dispels a misconception common among laypersons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
In this case, the trial court excluded the expert testimony on eyewitness identification because it did not relate to matters beyond the knowledge or experience possessed by laypersons nor would it dispel a misconception among laypersons.
The trial court based its decision on the particular facts of this case. Gorby, Frantz and Smith, strangers to the defendant, each testified that they were able to get a good, unimpaired look at the man who killed Dorothy Miller. They all described a man with the same basic physical characteristics wearing the same clothing. The court also noted that the two other eyewitnesses were men who actually knew Cory Holland.
In its brief, the State cites the persuasive authority of two Ohio appellate districts which have held that a trial court does not abuse its discretion when it excludes expert testimony on eyewitness identification where there are eyewitnesses who already know the defendant. See Statev. Gowdy (Sept 16, 1994), Erie App. No. E-93-45, unreported, State v.Martin (Sept 3, 1999), Hamilton App. No. C980444, unreported. In addition, the State points to three persuasive cases in which the exclusion of expert testimony on eyewitness identification was deemed to be harmless. See State v. White (Jan. 31, 1991), Cuyahoga App. No. 57944, unreported; State v. Haley (July 25, 1997), Green App No. 96-CA-50, unreported; State v. Layton (Feb 28, 1992), Lucas App. No. L-90-345, unreported.
The defendant-appellant attempts to distinguish these cases on the facts, arguing that these were all cases in which other evidence, apart from the eyewitness identification, linked the defendant to the crime. Holland asserts that there is no physical evidence linking him to the crime so, therefore, not allowing the expert to testify was an abuse of discretion. We disagree.
The trial court heard the testimony of Clarence Daniels who testified that he dropped the defendant-appellant off near the scene of the crime around the time of the crime. Daniels testified that Holland was wearing a black and white checkered shirt. Three disinterested eyewitnesses described the perpetrator as wearing a black and white checkered shirt with the physical characteristics of the defendant-appellant. Billy Powell, another acquaintance of Holland, testified that he saw the defendant-appellant running across the street in front of a car wearing a black and white checkered shirt.
Furthermore, the State presented two witnesses who testified that Holland admitted to them that he stabbed Dorothy Miller. While this evidence is not physical, it clearly amounts to other evidence linking the defendant-appellant to the crime. This court is not inclined to establish a rule that would deny a trial court's discretion to admit or exclude expert testimony on eyewitness identification in every situation where there is no physical evidence.
Therefore, we find that the trial court did not commit an abuse of discretion when it excluded expert testimony on eyewitness identification. Rather, the trial court properly exercised its discretion to exclude the expert testimony that would not assist the trier of fact in accordance with both Ohio case law and the rules of evidence.
Finally, the defendant-appellant alleges that the denial of the expert testimony prevented him from receiving a fair trial, therefore violating his due process rights under the Ohio and United States Constitutions. Again, we disagree. The trial court issued the jury an instruction on the factors to look for when assessing eyewitness credibility. Defense counsel was given the opportunity to cross-examine the eyewitnesses as to their identification. Furthermore, defense counsel was given the opportunity to point out the unreliability of eyewitness testimony during closing arguments. Therefore, the defendant-appellant had ample opportunity to impress upon the jury the various imperfections of eyewitness identifications such that the exclusion of an expert's testimony on the issue did not amount to plain error.
Accordingly, defendant-appellant's second and third assignments of error are overruled. The judgment of the Allen County Court of Common Pleas is hereby AFFIRMED.
Judgment affirmed.
WALTERS, P.J., and HADLEY, J., concur.