[Cite as *State v. Hurst*, 2020-Ohio-4899.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019 CA 0091 |
| BRIAN KELLY HURST | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Criminal appeal from the Richland County Court of Common Pleas, Case No. 2018CR0933

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: October 14, 2020

APPEARANCES:

For Plaintiff-Appellee

GARY BISHOP
Prosecuting Attorney
By: OLIVIA BOYER
Assistant Prosecuting Attorney
38 South Park Street, 2nd Floor
Mansfield, OH 44902

For Defendant-Appellant

DOMINIC L. MANGO
MANGO LAW OFFICE
43 S. Franklin Street
Delaware, OH 43015

*Gwin, P.J.*

{¶1}   Defendant-appellant Brian Kelly Hurst ["Hurst"] appeals his convictions and sentences after a bench trial in the Richland County Court of Common Pleas.

**Standard of Review - *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).**

{¶2}   Hurst's appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).  We informed Hurst that his attorney had filed an *Anders* brief on his behalf and granted him until August 21, 2020 to file a pro se brief.  Hurst has not filed a pro se brief.

{¶3}   In *Anders*, the United States Supreme Court held if, after a conscientious examination of the record, a defendant's counsel concludes the case is wholly frivolous, then he should so advise the court and request permission to withdraw.  386 U.S. at 744. Counsel must accompany his request with a brief identifying anything in the record that could arguably support his client's appeal.  Id. Counsel also must: (1) furnish his client with a copy of the brief and request to withdraw; and, (2) allow his client sufficient time to raise any matters that the client chooses.  Id.  Once the defendant's counsel satisfies these requirements, the appellate court must fully examine the proceedings below to determine if any arguably meritorious issues exist.  If the appellate court also determines that the appeal is wholly frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or may proceed to a decision on the merits if state law so requires.  Id.

*Facts and Procedural History*

{¶4}     On October 19, 2018, the Richland County Grand Jury indicted Hurst with an eleven-count indictment.  Count One charged Hurst with Rape in violation of R.C. 2907.02(A)(2), a felony of the first-degree.  Count Two charged Hurst with Rape in violation of R.C. 2907.02(A)(2), a felony of the first-degree.  Count Three charged Hurst with Rape in violation of R.C. 2907.02(A)(2), a felony of the first-degree.  Count Four charged Hurst with Sexual Battery in violation of R.C. 2907.03(A)(5), a felony of the third degree.  Count Five charged Hurst with Rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first-degree.  Count Six charged Hurst with Sexual Battery in violation of R.C. 2907.03(A)(5), a felony of the second-degree.  Count Seven charged Hurst with Rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first-degree.  Count Eight charged Hurst with Sexual Battery in violation of R.C. 2907.03(A)(5), a felony of the second-degree. Count Nine charged Hurst with Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree.  Count Ten charged Hurst with Illegal Use of a Minor in Nudity Oriented Material in violation of R.C. 2907.323(A)(3), a felony of the fifth-degree.  Count Eleven charged Hurst with Illegal Use of a Minor in Nudity Oriented Material in violation of R.C. 2907.323(A)(3), a felony of the fifth-degree.

{¶5}     Hurst entered a written waiver of his right to a jury trial in open court prior to the start of trial on August 27, 2019.  1T. at 1-3.[1]  The following facts were presented during Hurst's bench trial.

{¶6}     On February 18, 2018, W. P., a minor, was talking with his girlfriend, T. D., a minor, via FaceTime on his phone.  1T. at 52-53.  FaceTime is a video calling feature

---

[1] For clarity, the transcripts of Hurst's bench trial will be referred to by volume and page number as "__T.__."

on Apple products that allows people to see each other while they talk. 1T. at 52. At the time, W.P. would have been approximately thirteen or fourteen years old and T. D. was approximately fourteen or fifteen years old. 1T.at 49; 143. T.D. was washing dishes while she talked to W.P. 1T. at 54. As they talked, W.P. saw a man walk in whom he believed to be the boyfriend of T.D.'s grandmother, later identified as Hurst. 1T at 55-56. W.P. testified that Hurst called T.D. over to him. 1T. at 57. W.P. could not make out everything that Hurst said, but he could hear "fuck you tonight." 1T. at 57; 59. W.P. could see a look of fear and worry on T.D.'s face. W.P. tried to talk to T.D. about what he had heard. As W.P. pressed the issue, T.D. looked as she was about to cry, saying that Hurst told her "he was going to fuck her tonight." 1T. at 63. T.D. told W.P. that Hurst had been sexually abusing her for "a while." 1T. at 63- 64. Once T.D. and W.P. finished talking, W.P. told his father what T.D. had said and they called police. 1T. at 65. Sergeant Aaron Bushy of the Shelby Police Department arrived and T.D. told him what Hurst had been doing to her. 2T. at 326; 3T. at 521.

{¶7} K.R., T.D.'s grandmother, has custody and is raising T.D. and her two brothers. 2T. at 140-142. K.R. first met Hurst in 2006. Hurst became friends with K.R.'s husband during this time. When K.R.'s husband passed away in 2012, Hurst still came to visit and helped her through her grief. Eventually, the relationship became romantic and he moved in with her and her grandchildren. 2T. at 159. Two adult children of K.R. also resided in the home. 2T. at 196-197. K.R. testified that Hurst brought a sense of financial security to the home. When K.R. and Hurst became intimate, she noticed that Hurst had a wart on his penis that he covered with duct tape. 2T. at 164-165. She testified that Hurst told her the duct tape was supposed to make the wart go away. 2T. at 166.

K.R. never told this to anyone about the duct tape. K.R. testified that in time, Hurst became less willing to be intimate with her. Hurst would also not let her touch his phone. K.R. was afraid that Hurst might be cheating on her; however, because she was afraid of losing the financial security he brought to her family, she did not press the issue.

{¶8} In 2017, K.R. noticed that Hurst had begun to use the laptop that he had bought for her. K.R. testified and found that Hurst would never let her see what was on the screen when he was using it. T.D. testified that Hurst used the laptop to show her pornography. 2T. at 315.

{¶9} After T.D. disclosed the abuse, Amy Logan-Amelung, a caseworker with Richland County Children Services, interviewed her. T.D. told Ms. Logan that she was concerned that Hurst would come home and hurt her. Ms. Logan-Amelung also interviewed Hurst who denied the allegations. When asked if he had any prior history of allegations of sexual abuse, Hurst refused to answer the question. 1T. at 115-116.

{¶10} T.D. testified that when Hurst first moved in with her family, he began to touch T.D. on the buttock. 2T. at 246-247. She did not tell anyone because she was afraid that he would hurt her. Hurst would go on to touching T.D.'s breasts and vagina. T.D. testified that Hurst raped her on many occasions but as she got older, it became less frequent.

{¶11} T.D. testified that Hurst became more aggressive with his sexual assaults starting on her eleventh birthday. On T.D.'s eleventh birthday, November 21, 2013, she testified that Hurst put his fingers and penis inside her vagina, causing her pain. In December 2013, Hurst used a vibrator on T.D. by putting it inside of her vagina, causing her pain.

{¶12} On T.D.'s twelfth birthday, November 21, 2014, T.D. testified that Hurst again sexually assaulted her. On that day, T.D. testified that Hurst put his fingers and his penis inside of T.D.'s vagina, causing her pain. In July 2017, T.D. and her family were moving into a new home. T.D. testified that she awoke on the first night in the new home to find Hurst on top of her with his penis inside her vagina, causing her pain.

{¶13} The next incident that T.D. could remember was on October 1, 2017. On that day, T.D. testified that Hurst stuck his hand down her pants and inserted his fingers into her vagina. He then took her out to the garage and put her on his workbench. T.D. testified that Hurst then produced a dildo and inserted it into her vagina, causing her pain. Hurst also put his mouth on her vagina. Hurst stopped when he heard T.D.'s brothers come downstairs and he told her to put on her pants

{¶14} The next incident that T.D. could remember was on November 21, 2017, T.D.'s fifteenth birthday. While T.D. was waiting for a friend to come over, Hurst stuck his hand down her pants and inserted his fingers into her vagina. Hurst stopped when T.D.'s friend arrived and knocked on the door.

{¶15} On February 9, 2018, after the birthday party for one of T.D.'s brothers who was turning thirteen, T.D. awoke to Hurst on top of her, inserting his penis into her vagina, causing her pain. On February 13, 2018, while T.D. was sitting on the couch, T.D. testified that Hurst pulled off her pants and inserted his penis into her vagina, causing a significant amount of pain and causing it to bleed. After he ejaculated, Hurst put his mouth on her vagina and licked it. He then told her to go take a shower.

{¶16} The next incident that T.D. could remember was on February 18, 2018. While T.D. was sitting on the couch, Hurst again stuck his hand in her pants but was

having trouble because T.D. was wearing leggings.  He quickly pulled his hand out when he heard K.R.  It was on this day that T.D. disclosed to law enforcement what Hurst had been doing to her.

{¶17}  T.D. testified that Hurst told her that if she told her grandmother, that he would beat her to a pulp.  She testified that Hurst said that her grandmother would not believe her, she would not love her anymore and she would kick her out of the home.  There was no evidence that Hurst had been physically abusive toward T.D.  T.D. testified that when Hurst exposed himself to her and placed his penis into her vagina she could see that he had a piece of duct tape on it.

{¶18}  A SANE[2]  nurse conducted an examination of T.D.  T.D. disclosed during this exam that Hurst had duct tape on his penis.  The medical examination revealed irritation, scratches, and blood on T.D.'s cervix.

{¶19}  The computer that Hurst used to show T.D. pornography was seized by the police and searched.  Two pictures of child pornography were discovered and 3,671 URLs related to child exploitation materials.  Out of all the searches, 276 of them included the word "daddy."

{¶20}  Over objection, the state presented evidence that in 1985, Hurst was convicted of Attempted Unlawful Sexual Conduct with a Minor where he had sex with a thirteen-year-old girl when he was nineteen-years-old.  3T. at 542.  In 1998, Hurst was convicted of Gross Sexual Imposition forcing a fifteen-year-old girl up against a wall and kissing her bare breast when he was thirty-two-years-old.  3T. at 543-544.

---

[2] Sexual Assault Nurse Examiner.  2T. at 364.

{¶21} On September 5, 2019, the trial court found Hurst guilty on all counts except for Count Ten. Count Four was merged with Count Three, Counts Six and Nine were merged with Count Five, and Count Eight was merged with Count Seven. A prison term of ten years was imposed on Counts One, Two, Three, Five, and Seven. A prison term of eleven months was imposed on Count Eleven. The prison terms on all Counts were ordered to run consecutively.

{¶22} Counsel was appointed to pursue an appeal from the convictions and sentences[3].

*Potential Assignments of Error*

{¶23} Counsel's brief suggests three potential assignments of error as follows[4],

{¶24} "I. WHETHER THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF TWO TWENTY-YEAR OLD SEX OFFENSE CONVICTIONS.

{¶25} "II. WHETHER THE TRIAL COURT ERRED BY ALLOWING DETECTIVE AARON BUSHEY, WHO HAD NEVER PREVIOUSLY DONE SO, TO TESTIFY AS AN EXPERT WITNESS AN OPINE ON MATTERS PERTAINING TO THE PSYCHOLOGICAL SCIENCES AND REQUIRING AN ADVANCED EDUCATIONAL BACKGROUND IN THE FIELD WHICH THE WITNESS LACKED.

{¶26} "III. WHETHER THE TRIAL COURT ERRED BY ALLOWING SANE NURSE JENNIFER COFFINDAFFER, WHO HAD NEVER PREVIOUSLY DONE SO, TO TESTIFY AS AN EXPERT WITNESS AND OPINE ON MATTERS PERTAINING TO THE

---

[3] Appellate counsel is not the same attorney who represented Hurst at trial.
[4] We note that counsel did not brief the potential errors, nor cite to the portion of the record where the errors had occurred.

FIELDS OF STUDY REQUIRING AN ADVANCED EDUCATIONAL BACKGROUND IN THE FIELD WHICH THE WITNESS LACKED."

I.

{¶27} In his first potential assignment of error, counsel suggests the trial court erred in admitting evidence of his two prior convictions.

{¶28} Even if the admission of the testimony was improper, since the case was tried before a judge, it must affirmatively appear on the record that the judge relied on the alleged improper testimony. *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754, 759(1987); *State v. Hill,* 64 Ohio St. 313, 324, 595 N.E.2d 884(1992). In the case at bar, the trial court did not refer to the convictions during sentencing or in the trial court's judgment entry. [Docket Number 83].

{¶29} Given the extensive testimony of the victim, and lack of reference by the trial court we fail to find any evidence that affirmatively appear on the record that the trial judge relied on the alleged improper testimony.

{¶30} After independently reviewing the record, we find that there is no arguably meritorious claim concerning the admission of Hurst's two prior convictions upon which to base an appeal.

II.

{¶31} In his second potential assignment of error, counsel suggests that the trial court erred by permitting Sergeant Bushey to testify as an expert pertaining to area of psychology.

{¶32} In the case at bar, Sergeant Bushey was permitted to opine why it would take an individual months or years to report sexual abuse. 3T. at 512. He was further

permitted to testify about the body language of a sexual abuse victim.  3T. at 513.  No objection was raised at trial.  The state never proffered Bushey as an expert witness.

{¶33}  Even if the admission of the testimony was improper, since the case was tried before a judge, it must affirmatively appear on the record that the judge relied on the alleged improper testimony.  *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754, 759(1987); *State v. Hill,* 64 Ohio St. 313, 324, 595 N.E.2d 884(1992).  In the case at bar, the trial court did not refer to the specific testimony of Sergeant Bushey during sentencing or in the trial court's judgment entry.  [Docket Number 83].  A review of the record convinces us that there was sufficient evidence to support Hurst's convictions even if we exclude the testimony of Sergeant Bushey.  The judge as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  In the case at bar, the trial judge was able to review the interview of T. D. by Sergeant Bushey because it was recorded by a video camera.  Further, the trial judge saw T.D. and Sergeant Bushey both testify and be subject to cross-examination.

{¶34}  After independently reviewing the record, we find that there is no arguably meritorious claim concerning the testimony of Sergeant Bushey upon which to base an appeal.

III.

{¶35}  In his third potential assignment of error, counsel suggests that the trial court erred in qualifying SANE nurse Jennifer Coffindaffer as an expert witness.  At trial counsel objected, but "deferred" to the court on the issue of Nurse Coffindaffer's qualifications.  2T. at 371-372.

{¶36}  Evid.R. 702 provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶37} In *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, the Supreme Court observed,

Neither special education nor certification is necessary to confer expert status upon a witness. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge

he or she possesses will aid the trier of fact in performing its fact-finding function." *State v. Hartman,* 93 Ohio St.3d at 285, 754 N.E.2d 1150; *State v. Baston,* 85 Ohio St.3d 418, 423, 709 N.E.2d 128.  Pursuant to Evid.R. 104(A), the trial court determines whether a witness qualifies as an expert, and that determination will be overturned only for an abuse of discretion. *State v. Hartman,* 93 Ohio St.3d at 285, 754 N.E.2d 1150; *State v. Williams* (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444.

Id. at ¶46.  Pursuant to Evid.R. 104(A), the trial court determines whether an individual qualifies as an expert, and that determination will be overturned only for an abuse of discretion.  *State v. Williams*, 4 Ohio St.3d 53, 58, 446 N.E.2d 444, 448(1983); *State v. Batson,* 85 Ohio St.3d 418, 423, 709 N.E.2d 128(1999).

{¶38}  Ms. Coffindaffer has received her Bachelors in Nursing and is a registered nurse.  At OhioHealth, she is assigned to the forensic nursing department as a sexual assault nurse examiner (SANE) in the supervisory position of Assistant Coordinator.  In her various capacities as a nurse, Ms. Coffindaffer has worked for nineteen years.  She has also given five presentations at seminars or other educational facilities.  Finally, Ms. Coffindaffer teaches general nursing courses at Ashland University. She had previously been qualified as an expert witness on two separate occasions.

{¶39}  After independently reviewing the record, we find that there is no arguably meritorious claim concerning the qualification of nurse Coffindaffer as an expert witness upon which to base an appeal.

**Conclusion.**

{¶40} Following our review of Hurst's three potential assignments of error asserted in the *Anders* brief and our independent review of the record, we find that none of the potential assignments of error has merit.  Further, we are unable to find any issues for review in this appeal that are not frivolous.  Hence, we find the appeal to be wholly frivolous under *Anders,* grant counsel's request to withdraw, and affirm the judgment of the Richland County Court of Common Pleas.

By Gwin, P.J.,

Wise, John, J., and

Wise, Earle, J., concur