DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Hocking County Common Pleas Court judgment of conviction and sentence. The jury found Shelly R. Rutter, defendant below and appellant herein, guilty of aggravated vehicular assault in violation of R.C. 2903.08(A)(1).
 {¶ 2} Appellant raises the following assignments of error:
First assignment of error:
 {¶ 3} "Appellant has been denied her due process rights and other constitutional rights to a fair trial due to ineffectiveness of appellant's trial counsel."
Second assignment of error:
 {¶ 4} "The trial court committed harmful error by allowing the officer investigating this case to testify as an expert regarding the injuries of the appellant being consistent with someone driving a vehicle."
Third assignment of error:
 {¶ 5} "The guilty verdict of the jury was against the manifest weight of the evidence as reasonable minds could not differ that the state of ohio failed to prove guilt of the appellant beyond a reasonable doubt."
 {¶ 6} On July 27, 2001, appellant, Michelle Addington, and Jeremy Slack consumed alcoholic beverages at Sam's Club, a Logan tavern. Sometime after midnight, the three companions left the bar in appellant's vehicle. At approximately 2:30 a.m., appellant's vehicle crashed into a home, flipped on its side, and caused serious injuries to both appellant and to Addington. A subsequent investigation revealed that appellant had operated her vehicle while she was under the influence of alcohol. On August 20, 2001, the Hocking County Grand Jury returned an indictment and charged appellant with aggravated vehicular assault, in violation of R.C. 2903.08(A)(1).
 {¶ 7} At trial, appellant maintained that she was not the driver of the vehicle at the time of the crash. Appellant claimed to have no memory of the accident. Slack and Addington testified, however, that appellant was indeed the driver of the vehicle at the time of the accident.
 {¶ 8} Slack testified that appellant drove home from the bar. Slack testified that he sat in the front passenger's seat and that Addington sat in the back seat. Slack further stated that when he got into the car, he moved the seat back to make more room and he buckled his seat belt. Slack explained that the accident occurred after appellant had stopped at a stop sign and had "power braked." Slack defined the term "power brake" to mean that appellant had one foot on the gas and one foot on the brake, and that she then lifted her foot off of the brake thus accelerating at a high rate of speed.
 {¶ 9} After appellant's vehicle crashed, Slack left the scene to get help. He stated that he went to appellant's brother's house, which is located about one-quarter mile from the crash site. Slack stated that he also took a shower to wash the blood from his body.
 {¶ 10} Slack, accompanied by his father, returned to the accident scene later in the morning. When Slack returned, the investigating officer permitted Slack to remove his shoe from the vehicle.
 {¶ 11} On cross-examination, appellant's counsel attempted to show that Slack's testimony was biased and that he was having a relationship with Addington. Slack, however, denied involvement in an intimate relationship with Addington.
 {¶ 12} Addington, who has known appellant for approximately eighteen years, testified that she had planned to walk home from the tavern, but that as she started to walk, appellant pulled alongside her and stated that she would drive Addington home. Consistent with Slack's testimony, Addington stated that she sat in the back seat and that Slack sat in the front passenger's seat. Addington also stated that appellant placed one foot on the brake and one on the gas, which made the tires spin. Addington confirmed Slack's testimony that appellant then accelerated at a high rate of speed.
 {¶ 13} Ohio State Highway Patrol Trooper James Croston testified that he concluded, based upon his investigation, that appellant was the vehicle's driver. Trooper Croston stated that appellant's injuries, including a broken jaw and facial abrasions, were consistent with injuries that the driver of the vehicle would have received. Trooper Croston explained that throughout his career, he has reviewed 3,000 to 4,000 crashes and that he has received training to determine whether an air bag caused an injury, or whether a person was wearing a seat belt. Trooper Croston opined that appellant's injuries resulted from her failure to wear a seat belt and the force of the air bag upon impact. The trooper stated that appellant's "injuries were definitely from being behind the driver's seat."
 {¶ 14} Trooper Croston stated that when he examined Slack, he saw "no signs of any type of contact made with whether it be a dash or steering wheel or not even a type of burn from an air bag." Trooper Croston testified that Slack had stated that he had moved the passenger seat away from the dash area and that he had worn his seat belt. The trooper also explained that Slack's absence of air bag injuries resulted from Slack having been seated further away from the dash area and having worn his seat belt. When asked whether Slack could have been the driver of the vehicle at the time of the crash, Trooper Croston stated that there was "no way" that Slack could have been in the driver's seat:
 {¶ 15} "No injuries. Nothing that was broken out. There is nothing to his face. There was no type of powder burn, no type of bag burn. There was no type of visible injury to [Slack] that would show that he was in the driver's seat with a vehicle vaulting over another vehicle going through a house on the driver's side and not sustaining any type of injuries to his left side not even a scratch on his left arm."
 {¶ 16} Appellant presented a witness, Amy Faye Davis, who testified that she saw Slack drive the car away from the bar. Davis also stated that after the accident, she saw what she believed to be Slack's tennis shoe stuck under the brake pedal. Appellant's brother also testified that he saw a tennis shoe stuck under brake pedal. Trooper Croston explained, however, that he performed an inventory of appellant's vehicle and that he did not discover a tennis shoe stuck under the brake pedal. The trooper further stated that neither Davis nor appellant's brother would have been able to see the brake pedal because the vehicle was tipped on its side and the air bags covered the passenger compartment.
 {¶ 17} On February 20, 2002, the jury found appellant guilty as charged in the indictment. Appellant filed a timely notice of appeal.
 I {¶ 18} In her first assignment of error, appellant asserts that she received ineffective assistance of counsel. In particular, appellant contends that her trial counsel was ineffective in the following respects: (1) counsel should have hired an accident reconstructionist to investigate the accident so as to present the jury with some evidence that appellant was not driving the vehicle; (2) counsel failed to call certain witness who would have contradicted the state's witnesses that appellant was driving the vehicle; (3) counsel failed to call a doctor or other expert witness to testify that the nature of her injuries were not consistent with being in the driver's seat at the time of the accident; (4) counsel failed to attempt to interview Slack and Addington; (5) counsel improperly stipulated that appellant was under the influence of alcohol at the time of the accident; (6) counsel failed to file a motion to suppress the statements that she made to law enforcement officers; (7) counsel did not object when it came to light that one of the jurors knew Slack; and (8) counsel did not present witnesses and evidence concerning Slack's relationship with Addington. We disagree with appellant that trial counsel was ineffective in any of the foregoing respects.
 A STANDARD FOR REVIEWING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 19} In State v. Hanna (2002), 95 Ohio St.3d 285, 302-03,767 N.E.2d 678, the Ohio Supreme Court repeated the well-established standard for reviewing claims of ineffective assistance of counsel:
 {¶ 20} "Reversal of convictions for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674."
 {¶ 21} When a court reviews an ineffective assistance of counsel claim, the court should remain mindful that the Sixth Amendment right to counsel protects "the fundamental right to a fair trial." Strickland v.Washington (1984), 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674. "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id., 466 U.S. at 685. Thus, effective counsel is one who "plays the role necessary to ensure that the trial is fair," id., 466 U.S. at 685, and "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., 466 U.S. at 686.
 {¶ 22} Thus, counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id.,466 U.S. at 687; see, also, State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph two of the syllabus (stating that counsel's performance is deficient if it falls below an objective standard of reasonable representation); State v. Peeples (1994), 94 Ohio App.3d 34,44, 640 N.E.2d 208 (stating that counsel's performance is deficient if it "raise[s] compelling questions concerning the integrity of the adversarial process"). To prove that counsel's deficient performance prejudiced the defense, a defendant must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687; see, also,Bradley, paragraph three of the syllabus ("To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.").
 {¶ 23} Moreover, when a reviewing court considers an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. See State v. Phillips (1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643
(stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential." Strickland,466 U.S. at 689. As the Strickland Court stated, a reviewing court: "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id., 466 U.S. at 689; see, also, State v. Hamelin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476, cert. den. (1988), 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (stating that a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness).
 B FAILURE TO CALL VARIOUS WITNESSES {¶ 24} We disagree with appellant that trial counsel was ineffective for failing to call (1) an accident reconstructionist; (2) certain witnesses who appellant claims would have contradicted the state's witnesses; (3) a doctor or other expert witness to testify that appellant's injuries were not consistent with appellant being the driver at the time of the accident; and (4) witnesses who would have testified concerning Slack and Addington's alleged relationship. First, we note that the record contains no facts to indicate how any of the witnesses appellant claims trial counsel should have called would have testified. "It is impossible for this court to determine on a direct appeal from a conviction whether an attorney was ineffective in his representation of a criminal defendant, where the allegation of ineffectiveness is based on facts dehors the record." State v. Gibson (1980), 69 Ohio App.2d 91, 95,430 N.E.2d 954. In State v. Madrigal (2000), 87 Ohio St.3d 378, 390-91,721 N.E.2d 52, the court declined to find ineffective assistance based on trial counsel's failure to employ eyewitness identification expert because: "[n]othing in the record indicates what kind of testimony an eyewitness identification expert could have provided. Establishing that would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal." See, also, State v. Gross (2002), 97 Ohio St.3d 121,150, 776 N.E.2d 1061.
 {¶ 25} In the case sub judice, appellant's claims regarding counsel's failure to call various lay and expert witnesses are based on facts that cannot be ascertained from the record before this court. Therefore, we may not consider such claims in this direct appeal. A ruling in appellant's favor would be "purely speculative.' Madrigal,87 Ohio St.3d at 390.
 {¶ 26} Second, assuming arguendo that we could properly consider appellant's claims regarding trial counsel's failure to call various witnesses, it is doubtful that appellant could establish that trial counsel rendered ineffective assistance. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. See State v.Phillips (1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643. The decision whether to call a witness is generally a matter of trial strategy, and, absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel. State v. Williams (1991), 74 Ohio App.3d 686,695, 600 N.E.2d 298. Additionally, the failure to call an expert witness and to, instead, rely on cross-examination does not necessarily constitute ineffective assistance. See Madrigal, supra; State v.Nicholas (1993), 66 Ohio St.3d 431, 436, 613 N.E.2d 225; State v.Thompson (1987), 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407 (concluding that counsel were not ineffective in a rape case when counsel chose not to request the appointment of a forensic pathologist and relied, instead, upon cross-examination of the state's expert to rebut evidence of the crime); State v. Glover, Clermont App. No. CA2001-12-102, 2002-Ohio-6392 (concluding that trial counsel was not ineffective for failing to retain an expert witness in a child abuse case to testify that the child may have suffered from temporary brittle bone disease). In fact, in many criminal cases trial counsel's decision to not seek expert testimony "is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant." Id. "Further, even if the wisdom of such an approach is debatable, `debatable trial tactics' do not constitute ineffective assistance of counsel." Id. (citing State v.Clayton (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189). In Madrigal, for example, the Ohio Supreme Court concluded that counsel was not ineffective in failing to retain an expert to testify on the alleged weaknesses inherent in eyewitness testimony and choosing instead to rely upon cross-examination to impeach the eyewitnesses.
 {¶ 27} In the case at bar, trial counsel could have reasonably concluded that calling the witnesses appellant now complains counsel should have called would not have been helpful to appellant's defense. Consequently, because it appears that appellant cannot establish that trial counsel's decision not to call various witness was anything other than sound trial strategy, the issue of whether trial counsel's decision prejudiced the appellant's defense need not be considered. See Madrigal
("A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other."). Thus, we reject appellant's claims of ineffectiveness based upon trial counsel's decision not to call various witnesses.
 C FAILURE TO FILE MOTION TO SUPPRESS EVIDENCE {¶ 28} We further disagree with appellant that trial counsel rendered ineffective assistance by failing to file a motion to suppress the statements that she made to the law enforcement officers.
 {¶ 29} Once again, we again note that the record does not contain any facts to support appellant's claim. Thus, the issue is not properly before us in this direct appeal. See Madrigal, supra; Gibson, supra. Without facts setting forth the basis for the motion to suppress evidence, we are unable to evaluate whether the filing of such a motion would have had a reasonable probability of success. See, e.g., Gibson,69 Ohio App.2d at 95 ("Where the record contains no evidence which would justify the filing of a motion to suppress, the [defendant] has not met his burden of proving that his attorney violated an essential duty by failing to file the motion.").
 {¶ 30} Consequently, we disagree with appellant that trial counsel was ineffective for failing to file a motion to suppress the statements that she made to the officers.
 D TRIAL COUNSEL'S FAILURE TO ATTEMPT TO INTERVIEW SLACK AND ADDINGTON {¶ 31} We also note that the record does not reveal how trial counsel's decision to not interview Slack and Addington prejudiced appellant's defense. Moreover, trial counsel enjoyed a full opportunity to cross-examine both Slack and Addington.
 {¶ 32} Consequently, we disagree with appellant that trial counsel was ineffective for failing to attempt to interview Slack and Addington.
 E TRIAL COUNSEL'S STIPULATION THAT APPELLANT WAS UNDER THE INFLUENCE OF ALCOHOL AT THE TIME OF THE ACCIDENT {¶ 33} We also disagree with appellant that trial counsel rendered ineffective assistance for the stipulation that appellant was under the influence of alcohol at the time of the accident. First, although the record does not affirmatively disclose that appellant agreed to the stipulation, it is improbable that trial counsel would have stipulated that appellant was under the influence without appellant's knowledge and consent. Second, trial counsel could have determined that stipulating to appellant's intoxicated state was a better trial strategy than requiring the state to prove, through the use of witnesses who observed appellant's intoxicated state or through the use of other expert testimony to establish her level of intoxication, that appellant was under the influence of alcohol.[2] Moreover, appellant's defense theory at trial was that she was not the driver of the vehicle at the time of the crash. Thus, her level of intoxication did not have a direct bearing on her defense. Appellant's claim that a different trial strategy may have been a better course of action does not rise to the level of ineffective assistance. See, e.g., State v. Clayton (1980), 62 Ohio St.2d 45, 49,402 N.E.2d 1189, 1192.
 {¶ 34} Consequently, we disagree with appellant's argument that trial counsel was ineffective for stipulating that appellant was under the influence of alcohol at the time of the accident.
 F TRIAL COUNSEL'S FAILURE TO OBJECT TO JUROR {¶ 35} Appellant further asserts that trial counsel rendered ineffective assistance by failing to object to the continued presence of a juror when counsel learned that the juror knew Slack.
 {¶ 36} First, we note that appellant has not pointed to the portion of the record that establishes that a juror knew Slack, and our review of the record reveals that no such information was brought to the trial court's attention or to trial counsel's attention. Without evidence in the record, we are unable to review appellant's claim that trial counsel was ineffective for failing to object to the juror's continued service.
 {¶ 37} Accordingly, based upon the foregoing reasons, we reject all of appellant's claims of ineffective assistance of counsel and overrule appellant's first assignment of error.
 II {¶ 38} In her second assignment of error, appellant argues that the trial court erred by permitting Trooper Croston to testify that appellant's injuries were consistent with being in the driver's seat and that Slack's injuries were not consistent with Slack being in the driver's seat.
 {¶ 39} Evid.R. 702 governs the admissibility of expert testimony. The rule provides:
 {¶ 40} "A witness may testify as an expert if all of the following apply:
 {¶ 41} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 42} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 43} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
 {¶ 44} The "admissibility of expert testimony is a matter generally within the discretion of the trial judge and will not be disturbed absent an abuse of discretion." Miller v. Bike Athletic Co.
(1998), 80 Ohio St.3d 607, 616, 687 N.E.2d 735; see, also, State v.Hartman (2001), 93 Ohio St.3d 274, 285, 754 N.E.2d 1150. Courts should favor the admissibility of expert testimony when the expert testimony is relevant and meets the Evid.R. 702 criteria. See State v. Williams
(1983), 4 Ohio St.3d 53, 57-58, 446 N.E.2d 444.
 {¶ 45} In determining whether an expert's opinion is reliable and admissible under Evid.R. 702(C), the inquiry "focuses on whether the opinion is based upon scientifically valid principles, not whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial." Id., paragraph one of the syllabus. "The credibility of the [expert's] conclusion and the relative weight [expert testimony] should enjoy are determinations left to the trier of fact." State v. Nemeth (1998), 82 Ohio St.3d 202, 210,694 N.E.2d 1332.
 {¶ 46} "Neither special education nor certification is necessary to confer expert status upon a witness. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function."
 {¶ 47} State v. Hartman (2001), 93 Ohio St.3d 274, 285,754 N.E.2d 1150 (citing State v. Baston (1999), 85 Ohio St.3d 418, 423,709 N.E.2d 128; State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 191,616 N.E.2d 909). Furthermore, an expert witness need only aid the trier of fact in the search for the truth and need not be the best witness on the subject. Alexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155,159, 383 N.E.2d 564; see, also, Ishler v. Miller (1978), 56 Ohio St.2d 447,453, 384 N.E.2d 296, (stating that "the test of admissibility is whether a particular witness offered as an expert will aid the trier of fact in the search of the truth, not whether the expert witness is the best witness on the subject"); Nichols v. Hanzel (1996), 110 Ohio App.3d 591,674 N.E.2d 1237; Lewis v. Lawyer Chiropractic Clinic (Aug. 26, 1999), Scioto App. No. 98 CA 2590, unreported.
 {¶ 48} In Scott v. Yates (1994), 71 Ohio St.3d 219, 221,643 N.E.2d 105, the Ohio Supreme Court held that a law enforcement officer was not an expert witness qualified to render an opinion regarding the cause of an automobile accident. In Scott, the officer had a high school education and then attended the police academy for vocational training. While at the police academy, the officer received approximately two weeks of training regarding accident investigation. The officer was not, however, familiar "with the theory of conservation of momentum and did not know how it might affect the post-impact course of motor vehicles involved in a crash." Id. at 221. The officer also did not "know the formula for calculating the speed of motor vehicles, either before or after impact, or what effect speed would have upon the post-impact course of vehicles." Id. The officer admitted that a difference exists between investigating an accident and reconstructing one, that he was not an accident reconstructionist, that he never had the opportunity to work with an accident reconstructionist, and that he had never reconstructed an accident. Id.
 {¶ 49} The Ohio Supreme Court stated that in light of the above "particular" facts, the officer "did not possess the necessary knowledge or expertise" and "his opinion that appellant caused the collision was inadmissible." Id. at 221, 222; see, also, State v. O'Linn (Mar. 16, 2000), Cuyahoga App. No. 75815 (concluding that law enforcement officer was not qualified to render an opinion as to the cause of an automobile accident when no evidence existed that the officer had any training or experience in accident reconstruction).
 {¶ 50} In Reed v. Jordan (July 31, 1995), Scioto App. No. 94CA2229, this court determined that the trial court did not abuse its discretion by permitting a trooper to testify where the injured person was located at the time of impact when the evidence revealed that: (1) the trooper had training in accident investigation; (2) the trooper had investigated several hundred accidents prior to the accident in question; and (3) when the trooper did not rely upon scientific methodology to reach his conclusions, but instead relied upon his own observations and collection of data to reach his opinion.
 {¶ 51} In the case at bar, we do not believe that Scott applies to preclude the admission of Trooper Croston's testimony. Unlike the officer in Scott, Trooper Croston did not testify as to the cause of the accident. Rather, Trooper Croston limited his testimony to stating whether, based upon his personal observations of the crash scene and appellant's injuries, appellant was the driver of the vehicle. Moreover, Trooper Croston's experience investigating crashes surpasses that of the officer in Scott. Trooper Croston has been in law enforcement for over fourteen years. He spent eight years in the Marine Corps investigating crashes. After the Marine Corps, the trooper worked for the Lancaster City Police Department where he spent approximately four years performing routine patrol and investigating automobile accidents. After the Lancaster City Police Department, Trooper Croston began working for the State Highway Patrol. Throughout his career, he has investigated thousands of automobile crashes.
 {¶ 52} Trooper Croston further explained that he went "to school for and took a basic course and advanced course through IPTM which is basically a company that teaches crashes." During his training, he received instruction on what type of evidence to look for to determine whether a person was sitting in the driver's seat at the time of the accident when an air bag deployed. Trooper Croston stated that he has investigated several hundred accidents in which an air bag deployed and that, based upon his experience and observation of car accidents involving air bag injuries, such injuries typically include facial injuries and broken noses or jaws.
 {¶ 53} We believe that the foregoing facts sufficiently demonstrate that Trooper Croston possessed adequate knowledge and experience to give his opinion that appellant was the driver of the vehicle. The evidence shows that the trooper has received training in recognizing air bag injuries and in determining whether the person receiving the air bag injury was sitting in the driver's or passenger's seat. The trial court did not abuse its discretion by permitting the trooper to opine that appellant was the driver of the vehicle at the time of the accident.
 {¶ 54} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 55} In her third assignment of error, appellant argues that the verdict is against the manifest weight of the evidence. We disagree with appellant.
 {¶ 56} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses, while however, bearing in mind that credibility generally is an issue for the trier of fact to resolve. See State v.Thomas (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, 671 N.E.2d 541 (quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717). If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 57} After our review of the record in the case sub judice, we find substantial, competent and credible evidence upon which the trier of fact reasonably could conclude that the prosecution established, beyond a reasonable doubt, the essential elements of aggravated vehicular assault. The jury did not clearly lose its way and create a manifest miscarriage of justice.
 {¶ 58} R.C. 2903.08(A)(1) provides:
 {¶ 59} "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in either of the following ways:
 {¶ 60} "(1) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance."
 {¶ 61} Appellant asserts that the manifest weight of the evidence fails to reveal that she was the driver of the vehicle and she points to various pieces of evidence that she claims should have led the jury to this conclusion. Appellant basically argues that the jury should have believed, or interpreted differently, those pieces of evidence. We note, however, that determinations of credibility and weight of the testimony remain within the province of the fact finder. See, e.g., State v.DeHass (1967), 10 Ohio St.2d 230, N.E.2d paragraph one of the syllabus. We find nothing in the record to indicate that the jury lost its way in resolving the conflicts in evidence and created a manifest miscarriage of justice. The state presented substantial competent and credible evidence upon which the jury could have concluded, beyond a reasonable doubt, that appellant was the driver of the vehicle at the time of the crash.
 {¶ 62} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[2] Although appellant's blood test results were not admitted at trial, we note that the record from the hearing regarding appellant's motion to suppress the blood test results shows that appellant's blood alcohol concentration was approximately .211 — well over the legal limit.