DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which found appellant guilty of five counts of rape and five counts of gross sexual imposition involving his adolescent son. For all of the reasons set forth in detail below, this court affirms the judgment of the trial court.
 {¶ 2} Appellant, Jerry Scott Edwards, sets forth the following seven assignments of error: *Page 2 
 {¶ 3} "I: The trial court erred when it permitted the treating psychotherapist to testify as an expert in the area of child sexual abuse.
 {¶ 4} "II: The trial court erred by allowing the treating psychotherapist to testify that she helped the adolescent victim recall a repressed sexual abuse memory by using a controversial technique called Eye Movement Desensitization and Reprocessing (EMDR). This technique is not recommended by the American Psychological Association, is not accepted scientific evidence, and her opinion was unduly prejudicial and based upon on [sic] unreliable premise.
 {¶ 5} "III: If the trial court did not err by allowing the psychotherapist to testify as an expert regarding EMDR, then Edwards' right to due process was violated by not permitting Edwards' expert access to all of the psychotherapist's treatment notes, by not permitting the jury to watch an EMDR training videotape the psychotherapist watched with the adolescent victim, and would not allow Edwards expert to challenge the questioning protocol used to retrieve the memory.
 {¶ 6} "IV: The trial court abused its discretion through several evidentiary ruling [sic] during trial which cumulatively prevented Edwards from his right to a fair trial.
 {¶ 7} "V: Edwards' convictions were against the manifest weight of the evidence.
 {¶ 8} "VI: Edwards' convictions were not supported by sufficient evidence so his motion for judgment of acquittal pursuant to Rule 29 should have been granted.
 {¶ 9} "VII: Edwards' sentence violated his constitutional rights because the trial court did not impose a sentence that was the shortest available." *Page 3 
 {¶ 10} The following undisputed facts are relevant to the issues raised on appeal. This case stems from a disclosure by a teenage boy in the course of ongoing individual therapy that his father had initiated, encouraged, and engaged in an ongoing sexual relationship with the boy for several years. Ultimately, the boy's parents filed for divorce, the father moved out of the family residence, and the sexual activity with the son ceased. Subsequent to the onset of the divorce proceedings, the boy's mother secured individual therapy for her increasingly troubled son. In the course of therapy, the boy divulged the history of sexual activity by his father to his therapist. That revelation triggered a criminal investigation of the father.
 {¶ 11} On September 23, 2005, following the criminal investigation, appellant was indicted on five counts of rape and five counts of gross sexual imposition involving his teenage son. In order to more fully understand the events that transpired, it is beneficial to depict the physical surroundings in which the sexual activities occurred.
 {¶ 12} Appellant's residence in Holland, Ohio was equipped with two spaces which were purposefully isolated from the rest of the premises. Appellant created these unique, secluded spaces.
 {¶ 13} First, appellant transformed a sun porch connected to the rear of the house into a private hot tub room. A hot tub was installed in the porch, the windows were covered in sheets of styrofoam and painted over, locks were installed, and appellant installed a privacy sign stating, "In the hot tub." Appellant installed these various privacy *Page 4 
precaution measures despite the hot tub's location in an already enclosed space wholly contained on the premises of his single-family property.
 {¶ 14} In addition, appellant constructed a separate outbuilding in which he gave karate lessons primarily to adolescent males. Appellant installed video surveillance at the entry to the karate building so that he could monitor who was approaching from inside the structure. In addition, a peephole and deadbolt lock were installed in the entry door of the karate structure. All of the sexual activity underlying this case transpired in the hot tub room and karate room.
 {¶ 15} By all accounts, appellant and his son had an extremely close relationship prior to the events underlying this case. Appellant's son took karate lessons from his father and enjoyed spending a great deal of time with his father doing various activities.
 {¶ 16} When appellant's son was in the fourth grade, appellant began to spend time alone with his son naked in the hot tub room discussing sex with his son. Appellant first began to touch his son in the genital area at this time. By the time the son was in the fifth grade, appellant was initiating and engaging in mutual masturbation with his son in the hot tub room approximately four times per week. When appellant's son reached the sixth grade, appellant was initiating and engaging in mutual oral sex with his son on a regular basis in both the hot tub room and karate room.
 {¶ 17} As appellant's son got older, appellant encouraged him to invite similarly aged male friends over to spend the night with appellant and his son in the karate room. *Page 5 
Appellant would furnish his son and the other boys alcohol, show them pornography, and engage in various sexual activities with and in front of the boys.
 {¶ 18} Appellant purchased matching rings for him and his son, began discussing a range of adult matters in more detail with his son such as family financial issues, and exerted total control over the boy's life. During this timeframe, appellant's son began to suffer academically and became volatile and agitated.
 {¶ 19} Ultimately, appellant's wife filed for divorce in the face of their deteriorating marriage. After filing for divorce, appellant's wife secured individual counseling services for her son. After undergoing individual counseling sessions on a regular basis for a period of time, appellant's son eventually disclosed the true nature of his relationship with his father to the therapist. That revelation triggered the investigation and charges underlying this case.
 {¶ 20} On September 23, 2005, appellant was indicted on five counts of rape and five counts of gross sexual imposition arising from his several year history of sexual activity with his adolescent son. On August 28, 2006, a jury trial commenced. On September 1, 2006, the jury unanimously convicted appellant on all counts. On September 25, 2006, appellant was sentenced to a total term of incarceration of 49 years. Timely notice of appeal was filed.
 {¶ 21} In his first assignment of error, appellant asserts that the trial court erred in permitting his son's therapist to testify as an expert witness. In support, appellant goes to great lengths to impugn the professional qualifications and credibility of the therapist. *Page 6 
Appellant proffers unsupported claims that the therapist's credibility as an expert witness must be deficient because she allegedly appeared to "wing it" during her trial testimony and was "antagonistic."
 {¶ 22} It is well established that determining whether an individual qualifies as an expert rests within the discretion of the trial court. Such determinations will not be reversed absent an abuse of discretion.Porter v. Sidor, 8th Dist. No. 84756, 2005-Ohio-776, citing State v.Williams (1983), 4 Ohio St.3d 53, 58. An abuse of discretion connotes more than a mere error of law or judgment; it demands a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 23} Our review of the transcript reveals that appellant's attempt to characterize the victim's therapist as professionally deficient so as not to be qualified as an expert witness in adolescent sexual abuse matters enjoys no basis in objective and factual evidence.
 {¶ 24} The record shows that the therapist treating appellant's son is a licensed professional clinical counselor, licensed family therapist, devotes at least 25 percent of her practice to treating child sexual abuse victims, possesses a Masters Degree in counseling and a Masters Degree in family therapy from Bowling Green State University, and serves on several emergency assistance programs treating people for post-traumatic stress. *Page 7 
 {¶ 25} The record shows that counsel for appellant zealously attempted to discredit this witness at trial. Counsel went so far as to recite during cross examination of this witness an extensive litany of publications analyzing erroneous or fabricated memories of sexual abuse.
 {¶ 26} Despite all defense efforts to the contrary being mounted, the record contains no evidence that appellant's son fabricated the sexual abuse by his father, that the boy's therapist in any way improperly induced him into conveying the sexual abuse, or that the therapist was not qualified as an expert witness regarding the sexual abuse.
 {¶ 27} The record contains ample evidence in support of the trial court determination qualifying the therapist as an expert witness and permitting her testimony. Appellant's first assignment of error is found not well-taken.
 {¶ 28} In his second assignment of error, appellant contends that the trial court erred in allowing purported testimony by the therapist relaying sexual abuse memories of her client recalled through the use of a memory recall technique known as EMDR.
 {¶ 29} In response, we note that the record unequivocally establishes that EMDR therapy was never used in the course of treatment of appellant's son. The record shows that the sexual abuse memories were disclosed, not recalled. They were not repressed and recalled via EMDR.
 {¶ 30} The entire basis of appellant's inaccurate characterization of EMDR treatment being actually conducted is rooted in the showing of a generic informational *Page 8 
video regarding EMDR for consideration as a treatment option. Appellant's son rejected it, and EMDR treatment was not performed.
 {¶ 31} In addition, our review of the disputed videotape reveals that it in no way pertains to childhood sexual abuse, let alone sexual abuse of an incestuous nature, and cannot reasonably be construed as somehow covertly suggestive of same so as to encourage or create false memories of such activity.
 {¶ 32} Given the erroneous factual premise upon which appellant's second assignment of error is based, appellant's second assignment of error is not well-taken.
 {¶ 33} In his third assignment of error, appellant asserts that the trial court erred in not permitting the jury to view the disputed EMDR informational tape and in not permitting the defense expert to challenge the interviewing protocol purportedly used to "retrieve the memory."
 {¶ 34} It is well established that evidentiary rulings and the overall conduct of the trial are within the discretion of the trial court.State v. Long (1978), 53 Ohio St.2d 91, 98. Absent an abuse of discretion such rulings of the trial court will not be found in error.O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163.
 {¶ 35} Although he initially denied suffering sexual abuse by his father in therapy, appellant's son explained during his testimony that his original denial was rooted in his humiliation and embarrassment at having had sex with his father. In addition, expert testimony established that denial of sexual abuse early in a victim's therapy, followed by subsequent disclosure further along in the course of treatment, is common. *Page 9 
 {¶ 36} Our review of the record shows that this assignment is not an accurate characterization of the underlying events. As stated above, the record establishes that EMDR was never used in the victim's treatment, the EMDR tape was not relevant to this case, and the victim disclosed the sexual abuse by his father to his therapist, he did not "retrieve the memory" of it.
 {¶ 37} As such, the trial court properly denied defense questions of a treatment protocol that was not actually used, was not relevant, and would therefore have been highly prejudicial by implying the possibility of events that the facts showed did not occur. Appellant's third assignment of error is found not well-taken.
 {¶ 38} In his fourth assignment of error, appellant asserts that the trial court abused its discretion in several evidentiary rulings. In support, appellant presents a list of adverse evidentiary rulings. However, appellant's list of adverse rulings simply proclaims them as improper without any factual, relevant or substantive manner demonstrating how these challenged rulings, independently or collectively, prevented a fair trial.
 {¶ 39} Regardless, we have carefully reviewed the record in its entirety. It shows that the trial court went to great lengths to ensure and conduct a fair trial. We find no evidentiary rulings that can properly be characterized as unreasonable, arbitrary or unconscionable. Appellant's fourth assignment of error is found not well-taken.
 {¶ 40} Appellant's fifth and sixth assignments of error are interconnected and will be treated collectively. Appellant contends that his convictions of guilt on rape and gross *Page 10 
sexual imposition were against the manifest weight of the evidence and not supported by sufficient evidence.
 {¶ 41} A criminal conviction may be overturned on appeal if there is insufficient evidence, or if the conviction is against the manifest weight of the evidence. In considering a challenge based upon the sufficiency of the evidence, we must determine whether the evidence submitted to the trial court was legally sufficient to establish the elements of the offense. State v. Tompkins (1997), 78 Ohio St.3d 380,387. In resolving the sufficiency question, we determine whether the evidence presented, if believed, would satisfy an average person of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 42} In conjunction with the above analysis, we must also consider whether the verdicts were against the manifest weight of the evidence. When examining whether a conviction was contrary to the manifest weight of the evidence, the appellate court serves as a "thirteenth juror" to conclude whether the trial court lost its way so significantly as to result in a manifest miscarriage of justice, necessitating that the conviction be overturned. Thompkins at 387. In reaching this decision, we grant substantial deference to the trial court's determination given its unique opportunity to closely observe and the demeanor and credibility of the witnesses and evidence presented. State v.Mickles, 6th Dist. No. L-05-1206, 2006-Ohio-3803.
 {¶ 43} In applying these principles to this case, we note that the record shows that appellant's son presented clear, detailed and articulate testimony conveying that appellant *Page 11 
initiated, encouraged and engaged in numerous sexual acts with his adolescent son over a several year timeframe. In addition, appellee presented several eyewitnesses, who likewise presented clear, detailed and persuasive testimony, collaborating appellant's acts of sexual conduct with his adolescent son and adolescent male friends of the son.
 {¶ 44} Lastly, the treating therapist furnished clear and detailed testimony regarding the genesis of the victim's disclosure of sexual abuse at the hands of his father by appellant's son, and ample foundation underlying her professional opinion that the reported sexual abuse occurred.
 {¶ 45} By contrast, the record shows that appellant's efforts at portraying his son's treating therapist as manipulative and incompetent, and his son as misguided and deceitful were not supported by objective, relevant or factual evidence.
 {¶ 46} The record shows that the evidence submitted to the trial court was legally sufficient to establish the elements of offenses. There is no evidence that the trial court lost its way and facilitated a manifest miscarriage of justice. Appellant's fifth and sixth assignments of error are found not well-taken.
 {¶ 47} Lastly, appellant himself concedes that his seventh assignment of error, asserting that his non-minimum sentence was unconstitutional, cannot prevail in the face of our holding in State v. Coleman, 6th Dist. No. S-06-023, 2007-Ohio-448. Appellant's seventh assignment of error is found not well-taken.
 {¶ 48} On consideration whereof, we find that substantial justice was done and hereby affirm the judgment of the Lucas County Court of Common Pleas. Appellant is *Page 12 
ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
 Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 1